THE JOSEPH SCHONTHAL CO., APPELLANT, *v.* VILLAGE OF SYLVANIA ET AL., APPELLEES.

(Decided June 20, 1938.)

*Messrs. Arnold, Wright, Purpus & Harlor, Mr. Charles W. Racine* and *Mr. Richard H. Le Fevre,* for appellant.

*Messrs. Welles, Kelsey, Cobourn & Harrington,* for appellees.

OVERMYER, J.   This appeal on questions of law and fact is prosecuted by Summer & Company, an Ohio corporation, which has succeeded to all rights, title and interest in this litigation of The Joseph Schonthal Company, original plaintiff herein, and was substituted as plaintiff before trial below.   The action was designated by plaintiff as one for a declaratory judgment, but the relief actually prayed for is the quieting of title in plaintiff to certain real estate which is the subject of the litigation.

In Common Pleas Court issues were joined between the contending parties and upon hearing the court found generally in favor of the defendant, The Toledo Edison Company, and entered judgment for defendant, quieting title to the premises in The Toledo Edison Company.   From that judgment this appeal is prosecuted and has been submitted on the pleadings, the evidence consisting of a transcript of the testimony below and exhibits and certain stipulations, oral arguments, and briefs.

The premises involved consist of three parcels of land, together with buildings thereon, in the village of Sylvania in this county, referred to in the evidence, briefs and argument as parcels A, B and C.   These premises were formerly the property of The Toledo & Western Railway Company, now abandoned, and were used as sites for a power house, machine shops and car barns by the railway.   The original acquisition of these parcels by the railway company, the abandonment of the railway as of January 1, 1936, and the various transfers and attempted transfers of title to the premises, raise the legal questions presented.

It will be necessary to state the facts somewhat fully.   They are practically undisputed, and appear as follows:

It is admitted that prior to January 1, 1901, title to parcel "A" was in Orville R. Hine and wife; that prior to November 12, 1900, title to parcel "B" was in Wm. F. Bidwell; and that prior to November 21, 1900, title to parcel "C" was in Chas. E. Rockenstyre. On January 1, 1901, Hine and wife conveyed by deed to The Toledo & Western Railway Company parcel "A," which deed contained the following provision:

"The purchase price of said land was raised by the citizens of Sylvania and it is further agreed and understood that when said land, if ever, is not used for the purpose of a power house, machine shop or car barns, the same goes to the corporation of Sylvania village as their property."

On November 12, 1900, Wm. F. Bidwell and wife deeded parcel "B" to the same railway company, and the deed contained the same provision above quoted from the deed for parcel "A."

As to the deeds above referred to covering parcels "A" and "B," the contention between the parties arises over the validity of the limitations over of the future estate therein set up to the village of Sylvania. The plaintiff contends that the future interests thus attempted to be established are void because violative of the rule against perpetuities. The defendant, The Toledo Edison Company, which claims by deed from the village of Sylvania, and a consideration of $6,000, to have acquired all rights of the village of Sylvania thereunder in 1927, contends that said limitations over do not violate the aforesaid rule in Ohio as the same existed at the time, and are valid alienable future interests and effective according to their terms.

On November 21, 1900, Chas. E. Rockenstyre deeded parcel "C" to the village of Sylvania and on May 3, 1901, the village deeded the same to the railway company, the latter deed containing the following provision:

"It is also agreed when said land ceases to be used

for electric railway purposes, said land reverts to the incorporated village of Sylvania."

Appellee, The Toledo Edison Company, contends that both deeds as to parcel "C" were void, being an attempt by a municipal corporation to acquire property for the purpose of donating the same to a railroad, an act forbidden by law. (*Markley* v. *Mineral City*, 58 Ohio St., 430, 51 N. E., 28, 65 Am. St. Rep., 776). Appellee further contends that title to parcel "C" remained in Chas: E. Rockenstyre and that it acquired title thereto by quitclaim deed from the heirs of Chas. E. Rockenstyre in 1927. The appellant concedes the invalidity of the deeds from Rockenstyre to the village of Sylvania, and from the village to the railway company for parcel "C," and that they passed no title, and that therefore the attempt in said deed for parcel "C" to reserve a right of entry was a nullity. Appellant then contends that it has acquired title to parcel "C" by adverse possession, it having acquired title by conveyance from The Toledo & Western Railway Company to The Joseph Schonthal Company on June 12, 1935, and by conveyance from Schonthal Company to Summer & Company, present appellant, on November 2, 1936, and that it and its predecessors in title have been in open, notorious and adverse possession of all three parcels for more than thirty-five years.

It is conceded that by the aforesaid conveyances Summer & Company acquired whatever interests The Toledo & Western Railway Company had in and to said three parcels, and that the use of all properties by the railroad ended as of January 1, 1936, but it is denied that said railway company had any title to the premises to convey on June 12, 1935, or that the appellant acquired any rights by adverse possession.

Summarizing, appellee, The Toledo Edison Company, claims title by deed to it from the village of Sylvania for parcels "A" and "B," and by deed to it from the

heirs of Rockenstyre for parcel "C," both executed in 1927. Appellant, Summer & Company, says the attempts to reserve future interests in the deeds to the railway company for parcels "A" and "B" were void under the rule against perpetuities and that the village had no rights thereunder to convey, and that the deeds from Rockenstyre to the village and from it to the railway for parcel "C" were void, and that, as to it particularly, Summer & Company have title by adverse possession.

Counsel have submitted elaborate and helpful briefs, citing a great number of authorities which, within the limitations of this opinion, it is not possible fully to discuss and compare. We have examined most of the leading authorities cited and made independent examination of others.

Appellant, Summer & Company, argue that as to parcels "A" and "B" the limitations over are executory interests and that at the time of execution of the deeds it could not be determined whether they would ever vest, either in interest or possession, and therefore they were contingent interests within the meaning of the common-law rule against perpetuities. It is claimed by appellant that the common-law rule on this subject was early adopted as a part of the common law of Ohio and covered interests to which the statutory rule against entailments (Section 8622, General Code, repealed 114 Ohio Laws, 475) did not apply. It is further claimed that the statutory rule established by that section did not and could not apply to corporations, and therefore the common-law rule against perpetuities made the limitations in the deeds void because they might not vest within the time limit fixed by the rule.

As an alternative, it is urged that if the foregoing claims are not sustained, the aforesaid particular kind of executory limitations are so uncertain ever to vest in possession that it leaves nothing but a mere possi-

bility or mere expectancy, which would be subject to be destroyed by legislative enactment at any time; that in the instance here considered they were so destroyed by the statutory enactment adopting the common-law rule against perpetuities, effective January 1, 1932 (Section 10512-8, General Code), and that on either theory advanced the limitations over to the village as to parcels "A" and "B" were void, leaving the fee in Summer & Company as successor to the railway, free of the limitations.

Did the attempted creation of these executory limitations over to the village of the entire estate of the grantors in said parcels upon the cessation of the use of the premises by the railway violate the rule against perpetuities? Appellant concedes them to be valid unless they violate said rule. The common-law rule referred to provided that no estate could be created to commence in the future unless it must vest, if at all, within twenty-one years after a life or lives in being at the creation of the interest. The establishment and application of the rule was to prevent property from being tied up in such manner as to make it inalienable, or in such way as to take it out of commerce and the general and free circulation of property. 31 Ohio Jurisprudence, 308, Section 6; 21 Ruling Case Law, 288, 2 Simes on Future Interests, 327, 328.

Testing the aforementioned deeds by this rule, does the rule apply? Surely the future interests here involved were limited to a definitely ascertained recipient, then in being, the village of Sylvania. The grantee in the deeds and the village could have joined at any time in a deed conveying full ownership to another. The only contingency to postpone full ownership to the village and immediate vesting and possession by it was the happening of the contingency provided for in the deeds. There was a definite recipient in being to receive full title, and capable of receiving it, immediately upon the happening of the contingency. The

premises were not, therefore, rendered inalienable or removed from commerce or free circulation by the limitations over or future interests set up.

Here there was no "perpetual prevention of alienation" as suggested in an annotation in 49 Am. St. Rep., 118. Property rights in the nature of vested interests have never been subject to the rule, however remote the right of possession. 31 Ohio Jurisprudence, 312. Here the limitations over are not repugnant to the estate given in the deeds, and do not affect the enjoyment of the estate given the grantee, but are limitations independent of the estate granted, on the happening of which the estate is lost, which is not forbidden. 11 Ruling Case Law, 476.

"Executory devises are now generally considered not as bare possibilities but as certain interests and estates, and as such to be assignable, devisable, and transmissible to the representatives of the devisee, provided that the identity of the latter is certain, and that the object of the devise is fixed. It is otherwise if the object of the limitation over is not ascertained or fixed, or the persons to whom the estate is to pass are not ascertainable until the contingency does happen." 16 Ohio Jurisprudence, 518.

Future interests are expressly made transmissible by Section 10512-4, General Code. It provides as follows:

"Remainders, whether vested or contingent, executory interests, and other expectant estates are descendible, devisable and alienable in the same manner as estates in possession."

It seems to us the interests here reserved are property interests which are more than mere expectancies or possibilities, and that they are such as come within constitutional protection against destruction by legislative enactment.

"* * * many contingent future interests are of far more substantial character and more likely to take

effect in possession than some future interests which are vested subject to be divested.'' 1 Simes on Future Interests, 100.

Assuming that the common-law rule against perpetuities was in effect in Ohio when these deeds were executed in 1900 and 1901, we hold that the rule was not violated by the limitations over of the executory future interests as set up in said conveyances to the railway. Appellee contends, however, that the common-law rule against perpetuities, if it ever was in effect in Ohio prior to 1932 (Section 10512-8, General Code), was not so in effect after the enactment in 1811, effective in 1812, of Section 8622, General Code; in other words, that from 1812 to 1932 the rule against perpetuities in Ohio was a statutory rule set up by the first part of Section 8622, which provided as follows:

''No estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this state, shall be given or granted, by deed or will, to any person or persons but such as are in being, or to the immediate issue or descendants of such as are in being at the time of making such deed or will; and all estates given in tail,'' etc.

The foregoing section appears to have been the only statutory prohibition against perpetuities or governing the creation of future interests in real property in Ohio between 1812 and 1932, when Section 10512-8, General Code, was enacted, adopting the common-law rule against perpetuities. If the common-law rule against perpetuities was in force in Ohio prior to 1812, it is clear from the authorities that it was abrogated by the enactment of Section 8622, General Code, and so remained until re-adopted by statutory enactment in 1932 under Section 10512-8, General Code. *Sager* v. *Byrer,* 26 N. P. (N. S.), 129, affirmed by Court of Appeals and motion to certify overruled by Supreme Court in 19 O. L. R., 713; *Phillips* v. *Herron,* 55 Ohio St., 478, 45 N. E., 720; *Dayton* v. *Phillips,* 28 W. L. B.,

327, 11 Dec. Rep., 680; *Brasher* v. *Marsh,* 15 Ohio St., 103; 31 Ohio Jurisprudence, 304.

Under the statutory rule set up by Section 8622, General Code, the requirements of the rule were met by the deeds here in question. To say that the word "person," used in said section applies only to an individual and not to a corporation, and if to a corporation then only to a private and not a municipal corporation, would be applying one rule—a statutory rule—to "persons," and a different rule—the common-law rule—to private corporations, and no rule at all to municipal corporations, though we know of no inhibition, statutory or otherwise, against municipal corporations acquiring real estate, especially under circumstances such as are named in these deeds. Certainly no rule against perpetuities could ever be intended to apply to municipal corporations. On the contrary, they are designed and intended to be perpetual. The rule set up in Section 8622, General Code, restricted the creation of future interests to certain *persons* without a limitation as to *time* of vesting of the interest, while the common-law rule was not concerned with the *persons* in whom the future interests could be created but with the *time* when such interests could legally vest. 31 Ohio Jurisprudence, 309. Either Section 8622 applied to corporations as well as persons, or there was no rule against the creation of such future interests in corporations.

Section 10512-8, General Code, adopting the common-law rule in Ohio as to perpetuities, was enacted in 1932 and former Section 8622, General Code, was repealed. More than thirty years prior to that time (1900 and 1901) the deeds in question were executed to the railway company, and about six years prior to 1932 the appellee, The Toledo Edison Company, had paid to the village of Sylvania a consideration of $6000 for the purchase of the future interests set up in said deed. The contention made by appellant that

Section 10512-8, General Code, is retroactive in its effect and operation is untenable, in our view, because it does not in terms so provide, and because of the substantial interests set up by the executory limitations in said deed. 37 Ohio Jurisprudence, 819 *et seq.*, and cases cited.

"When the intention of the Legislature is to give a statute a retroactive effect, such intention must not be left to inference or construction, but must be manifested by express and unequivocal expression. If it is doubtful * * *, the doubt should be resolved against such operation." 37 Ohio Jurisprudence, 821, 822. See also *Brockschmidt* v. *Archer*, 64 Ohio St., 502, 60 N. E., 623; 16 Ohio Jurisprudence, 518; Section 10512-4, General Code; 1 Simes on Future Interests, 99, Section 66.

We hold that the future interests created in the deeds here considered as to parcels "A" and "B" are of such character as to constitute valid estates, and that the rule against perpetuities existing in Ohio at the date of their creation was not violated. It follows that we find the title to said parcels to be in The Toledo Edison Company by virtue of lawful conveyances duly made to it. See 1 Restatement of Law of Property, Chap. 4, p. 131, illustration 21.

As to parcel "C" the record shows, as hereinbefore stated, that this parcel was deeded by Rockenstyre to the village of Sylvania, and by the village donated by deed to the railway company in 1901. The deed to the railway contained the "reverter" provision hereinbefore set out. Under the authority cited (*Markley* v. *Mineral City, supra*) this attempted acquisition of real property by a village to be donated to anyone was void. This is conceded. The title therefore remained in Rockenstyre. In 1927 the appellee, The Toledo Edison Company, secured from the heirs of Rockenstyre a quitclaim conveyance of said parcel "C," which places the record title thereto in The Toledo Edison

Company. The legal title is therefore in The Toledo Edison Company unless the doctrine of estoppel must be applied to the first Rockenstyre deed or unless the claim of adverse possession thereto by appellant has been established.

It is urged by appellant that at the time of execution and delivery of a quitclaim deed by the village to The Toledo Edison Company in 1927, the only interest the village had in parcel "C" was a right to enter when the condition in the former deed to the railway was broken, and that a right of entry, before breach of condition, is not subject to conveyance and that an attempt to convey it extinguishes the right of entry. It is also pointed out that since the deed in 1901 from the village to the railway company was concededly void, the village could reserve no right of entry. Upon these premises it is argued that the railway having taken possession of the premises under the void deed and continued in possession for the required period, the appellant as successor to the railway has title to parcel "C" by adverse possession.

We have examined these claims and the authorities cited in support thereof. The claim of estoppel created by the conveyance of the village of Sylvania to The Toledo Edison Company, so far as parcel "C" is concerned, seems to us without merit, because The Toledo Edison Company does not claim title to parcel "C" through the deed from Sylvania village in 1927, but does claim title through the deed from the heirs of Rockenstyre in 1927. The deeds to the railway by Rockenstyre and the village in 1901 being concededly void, the title to parcel "C" concededly remained in Rockenstyre. His heirs quitclaimed to The Toledo Edison Company for a valuable consideration. The deed from Rockenstyre to the village did not contain the "reverter" clause hereinbefore referred to and as to him and his estate no estoppel was created.

The only evidence we find in the record on the question of adverse possession are a few questions and answers relating to the erection of certain buildings on certain parts of the premises by the railway company, and there is no definite evidence as to time or dates, or as to such open, adverse and hostile possession as is required to establish title by adverse possession to parcel "C" for the period required by law. The burden is on those claiming by adverse possession. The evidence is that all buildings are built on parcels "A" and "B." A power house was erected upon a part of parcel "C," referred to as "D" to which part the appellant herein makes no claim. There is no evidence sustaining the burden of proof as to adverse possession to the remainder of parcel "C" by the railway company, nor any one claiming under it, by any tracks, switches or buildings, nor by actual possession. It was there, available for use, but not used.

We find and hold therefore, that as to parcel "C" the title is now in the appellee, The Toledo Edison Company.

Appellant insists that, if its claims to the real estate are not sustained, then it is at least entitled to the buildings located on the premises, consisting of a large brick building used as car barns and machine shop and offices, also a one-story frame building and addition, built on a concrete foundation, used for a ticket office, waiting room and baggage room by the railway. Appellant's theory is they are personal property which the appellant would have a reasonable time to remove. Appellant cites *Teaff* v. *Hewitt,* 1 Ohio St., 511, as authority upon the criteria for determining what property does or does not become a fixture, and, applying the tests there given under numbers 2 and 3 of the second paragraph of the syllabus, it is argued that articles necessary to the business carried on upon the premises and placed there for that purpose, are personalty, while articles placed upon the real estate as

accessory to the realty, regardless of the use to which it is put, become a part of the realty, citing *Wagner v. Cleveland & Toledo Rd. Co.*, 22 Ohio St., 563, 10 Am. Rep., 770, and a number of other cases.

The permanent character of the buildings and their affixation to the land is not disputed. The evidence shows that the land in question was acquired by the railway company for the very purpose of erecting said buildings, as is shown by the deeds. The buildings are of such character, according to the evidence, that they may well be used for a number of purposes, the former ticket offices now being used as a grocery, and the larger building might be used for garages, offices or dwellings. Therefore, these structures are not to be compared with such railway structures as piers, abutments, trestles, viaducts or railway tracks and switches, which are discussed in many cases cited. As to the intention of the party making the annexation, one of the tests to be applied, it is evident that the railway company, it being the owner of the fee, subject to the future interests reserved by the village, intended to make the buildings permanent fixtures to the realty and hoped to continue to use them in the operation of the railway indefinitely.

We think, under the rules laid down in the authorities referred to, and from the evidence before us, there can be no question as to the permanent character of the accessions referred to; that they are accessions to the realty and pass with the title thereof.

Our findings on the issues presented are in favor of the appellee, The Toledo Edison Company, defendant below, and a decree will be entered accordingly.

*Decree accordingly.*

LLOYD and CARPENTER, JJ., concur.