VILLAGE OF PINEHURST v. REGIONAL INVESTMENTS OF MOORE, INC., WACHOVIA BANK AND TRUST COMPANY, N.A., PINEHURST ENTER-PRISES, INC., RESORT HOLDING CORPORATION, PINEHURST WATER COMPANY, INC., PINEHURST SANITARY COMPANY, INC., THE CITIBANK, N.A., FIRST NATIONAL BANK OF CHICAGO, THE CHASE MANHATTAN BANK, N.A., CROCKER NATIONAL BANK, WELLS FARGO, N.A., FIRST PENNSYLVANIA BANK, N.A., FIRST NATIONAL STATE BANK OF NEW JERSEY, J. WALTER McDOWELL, III, JOHN KARSCIG, JR., ROBERT W. VAN CAMP AND JAMES R. VAN CAMP

No. 69A90

(Filed 27 January 1992)

1. **Deeds § 59 (NCI4th); Vendor and Purchaser § 2.1 (NCI3d)— preemptive right—purchase of water and sewer systems— rule against perpetuities**

The rule against perpetuities applied to a preemptive right in a consent judgment giving the Village Council of Pinehurst a right of first refusal to purchase on behalf of the Village of Pinehurst residents the water and sewer systems serving those residents in the event that Pinehurst, Inc. decided to sell such systems. Therefore, the preemptive right was unen-forceable where it was not limited in time.

**Am Jur 2d, Perpetuities and Restraints on Alienation § 65.**

**Pre-emptive rights to realty as violation of rule against perpetuities or rule concerning restraints on alienation. 40 ALR3d 920.**

2. **Deeds § 59 (NCI4th); Vendor and Purchaser § 2.1 (NCI3d)— preemptive right—rule against perpetuities—property used in business**

A preemptive right will not be excepted from the rule against perpetuities because the real property which plaintiff desires to purchase is used in the operation of a business.

**Am Jur 2d, Perpetuities and Restraints on Alienation § 65.**

**Pre-emptive rights to realty as violation of rule against perpetuities or rule concerning restraints on alienation. 40 ALR3d 920.**

3. **Vendor and Purchaser § 2.1 (NCI3d)— preemptive right— purchase of water and sewer systems—not charitable or benevolent use—rule against perpetuities**

A preemptive right granted by Pinehurst, Inc. to the Village Council of Pinehurst to purchase its water and sewer systems for the benefit of residents of the Village of Pinehurst was not for a charitable or benevolent use so as to be exempted from the rule against perpetuities by N.C.G.S. § 36A-49.

**Am Jur 2d, Perpetuities and Restraints on Alienation § 65.**

**Pre-emptive rights to realty as violation of rule against perpetuities or rule concerning restraints on alienation. 40 ALR3d 920.**

4. **Deeds § 59 (NCI4th); Vendor and Purchaser § 2.1 (NCI3d)— preemptive right—Village Council as grantee—rule against perpetuities—right not personal to grantee**

A preemptive right granted to the Village Council of Pinehurst to purchase its water and sewer systems for the benefit of the residents of the Village of Pinehurst was not personal to the grantee so as to exclude it from the operation of the rule against perpetuities since the period cannot be measured by the life of the Village Council but must be measured by a human life or lives.

**Am Jur 2d, Perpetuities and Restraints on Alienation § 65.**

**Pre-emptive rights to realty as violation of rule against perpetuities or rule concerning restraints on alienation. 40 ALR3d 920.**

5. **Estoppel § 15 (NCI4th)— preemptive right—consent judgment—acceptance of benefits—insufficiency for estoppel**

Defendants were not estopped from contesting the validity of a preemptive right granted by a consent judgment to the Village Council of Pinehurst to purchase the water and sewer systems serving Village of Pinehurst residents by their acceptance of benefits under the consent judgment because those alleged benefits were insufficient to support an estoppel where they consisted of (1) defendants' avoidance of further litigation; (2) defendants' right to appoint three members of an expanded architectural committee which approves plans for the construction of residences within the Village, a right

they already had; and (3) defendants' references to the beneficial terms of the consent judgment when selling property within the Village.

**Am Jur 2d, Perpetuities and Restraints on Alienation §§ 10, 65.**

Justice MEYER dissenting.

Chief Justice EXUM joins in this dissenting opinion.

APPEAL by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 97 N.C. App. 114, 387 S.E.2d 222 (1990), affirming a summary judgment of Seay, J., at the 15 December 1988 Session of Superior Court, MOORE County. Heard in the Supreme Court 7 September 1990.

The plaintiffs brought this action to enforce a preemptive right or a right of first refusal to purchase from the defendant Pinehurst Enterprises, Inc., the water and sewage facilities serving the Village of Pinehurst. In 1973, a lawsuit was filed in superior court against the Diamondhead Corporation, which was then the principal owner of land in Pinehurst, by persons representing the class of the residents of Pinehurst. The Village of Pinehurst was not at that time incorporated and the purpose of the lawsuit was to stop certain practices in the development of the Village.

A consent judgment was entered, one part of which provided that in the event the defendant decided to sell the sewage and water systems, the Village Council of Pinehurst would have the right to purchase the systems on behalf of the residents of the Village of Pinehurst at a price and on terms at least equal to the price and terms of the highest offer by a bona fide purchaser. The consent judgment provided that in the event the stock or assets of Pinehurst, Inc. were sold, the right of first refusal would survive the sale. Pinehurst Enterprises, Inc., a wholly-owned subsidiary of Resort Holding Corporation has succeeded to the assets of Pinehurst, Inc.

On 2 December 1986, Regional Investments of Moore, Inc. offered to purchase the water and sewer systems for $2,500,000. The plaintiff offered to pay this amount, but Pinehurst Enterprises, Inc. sold the water and sewer systems to Regional Investments of Moore, Inc. on 27 February 1987. The plaintiff brought this action to have its rights determined.

**VILLAGE OF PINEHURST v. REGIONAL INVESTMENTS OF MOORE**

[330 N.C. 725 (1992)]

The superior court entered an order of summary judgment for the defendants and the Court of Appeals affirmed. The plaintiff appealed to this Court.

*Brinkley, Walser, McGirt, Miller, Smith & Coles, by Gaither S. Walser, D. Clark Smith, Jr. and Stephen W. Coles, for plaintiff appellant.*

*Hunton & Williams, by Edward S. Finley, Jr., for defendant appellees.*

WEBB, Justice.

[1]    The Court of Appeals held that summary judgment was properly entered for the defendants because the right of first refusal was not limited in time and this duration violated the rule against perpetuities. We hold that we are bound by *Smith v. Mitchell*, 301 N.C. 58, 269 S.E.2d 608 (1980), to affirm the Court of Appeals. In *Smith*, we held that a preemptive right was not void because it terminated within the period of the rule against perpetuities. We said that a preemptive right or a right of first refusal to be valid must not extend beyond the period of the rule against perpetuities. It is true, as the plaintiff argues, that this part of our opinion in *Smith* could be considered dictum. It is clear, however, that in *Smith* it was this Court's intention to make the rule against perpetuities applicable to preemptive rights. We would have to overrule *Smith* to say the rule does not apply, which we decline to do.

The plaintiff, relying on cases from other jurisdictions, *Metropolitan Transp. Auth. v. Bruken Realty Corp.*, 67 N.Y.2d 156, 501 N.Y.S.2d 306 (1986) and *Singer Co. v. Makad, Inc.*, 213 Kan. 725, 518 P.2d 493 (1974), argues that there should be an exception to the application of the rule against perpetuities in this case because the preemptive right is for the purchase of a business. In *Metropolitan Transp. Auth.*, the New York Court of Appeals held that certain preemptive rights do not have to comply with the rule against perpetuities. In that case, the State of New York, acting through a public authority, gave a subsidiary of the Pennsylvania Railroad a preemptive right to purchase real estate owned by the Long Island Railroad, which was owned by the State of New York. The New York Court of Appeals said that the enforcement of the rule in that case would invalidate an agreement which promoted the use and development of property while imposing only a minor impediment to free transferability. The New York

Court of Appeals held that the rule against perpetuities does not apply to preemptive rights in commercial and governmental transactions. In *Singer*, the Supreme Court of Kansas held that the rule does not apply to commercial leases.

[2] We do not believe we should make an exception to the rule because the real property which the plaintiff desires to purchase is used in the operation of a business. If a restraint on alienation is bad, we see no reason why it is made good because it is part of a commercial transaction or the property is used for business purposes. We note that in *Smith* the restriction was put on the lot in connection with the development of a tract of land as a real estate development. This made it part of a commercial transaction.

[3] The plaintiff contends that the preemptive right should not be subject to the rule against perpetuities because of N.C.G.S. § 36A-49 which says in part:

> No gift, grant, bequest or devise . . . to religious, educational, charitable or benevolent uses . . . shall be invalid . . . by reason of the same in contravening any statute or rule against perpetuities.

The plaintiff says the creation of the preemptive right was a grant for a charitable or benevolent use and is exempt under this section from the application of the rule against perpetuities. Assuming the creation of the preemptive right was a grant, it was not for a charitable or benevolent use. A municipal corporation's ownership and operation of a water and sewer service is a proprietary function operated for a profit. *See Bowling v. Oxford and R.R. v. Oxford*, 267 N.C. 552, 148 S.E.2d 624 (1966).

[4] The plaintiff next argues that the preemptive right was personal to the grantee which keeps it from violating the rule. The action in which the consent judgment was entered was a class action in which the plaintiff represented all persons owning property in the Village of Pinehurst. The Village Council of Pinehurst received the preemptive right. If the Village Council was a corporation, the period cannot be measured by its life. If we allowed the measuring life to be the life of a corporation, which may be perpetual, we would eviscerate the rule. The measuring life or lives must be a human life or lives.

[5] The plaintiff next contends that the defendants should be estopped from contesting the validity of the preemptive right. The plaintiff says, relying on *Redevelopment Comm. v. Hannaford*, 29 N.C. App. 1, 222 S.E.2d 752 (1976), *Shuford v. Oil Co.*, 243 N.C. 636, 91 S.E.2d 903 (1956) and *Oil Co. v. Baars*, 224 N.C. 612, 31 S.E.2d 854 (1944), that the facts in this case support a quasi-estoppel. The plaintiff contends that the defendants have accepted the benefits of the consent judgment and cannot now attack its validity to the detriment of the plaintiff who relied on the validity of the judgment.

The plaintiff says the defendants accepted benefits under the judgment in three ways. First, the entry of the judgment ending litigation was a benefit to the defendants in that they were allowed to avoid further litigation and carry on the development of Pinehurst. The plaintiff also says that the defendants were allowed under the consent judgment to have three members of an architectural committee which approves plans submitted for construction of residences on property within the Village. The plaintiff finally says the defendants have referred to the beneficial terms of the consent judgment when selling property within the Village.

Assuming an estoppel can bar the application of the rule against perpetuities, the benefits accepted must be more substantial than were accepted in this case to support an estoppel. The mere signing of a judgment which ends litigation does not create an estoppel. We can assume that both sides wanted to end the litigation and they bargained so that each gave up something. This is not the acceptance of benefits under the judgment.

We cannot say that the defendants' right to appoint three members of the architectural committee was a benefit whose acceptance by the defendants created an estoppel. The record shows that prior to the litigation there were three members of the committee, all of whom were appointed by the defendants. Under the terms of the consent judgment, the committee was increased to five members, two of whom were appointed by the plaintiffs in that case. The defendants did not benefit from this change in the committee.

The plaintiff has failed to show how the reference to prospective customers of the consent judgment is a benefit to the defendants. The record shows that Pinehurst Enterprises was required to deliver a "HUD statement" to prospective purchasers which

**VILLAGE OF PINEHURST v. REGIONAL INVESTMENTS OF MOORE**

[330 N.C. 725 (1992)]

referred to the use of consent judgment as a possible restriction on the use of the property. This would not be a benefit to the defendants.

The plaintiff, relying on *Thompson v. Soles*, 299 N.C. 484, 263 S.E.2d 599 (1980), contends that under the doctrine of elections, judgment should be entered in its favor. In *Thompson*, we held there was evidence of an election by the defendant by which he relinquished all other interest in the real property left by his father and mother when he accepted a deed to property which said, "this conveyance is accepted as an advancement to Richard V. Soles of his entire interest in the real property of the estate of the grantor and of his father." *Thompson v. Soles*, 299 N.C. 484, 489, 263 S.E.2d 599, 603. We held that by accepting the property conveyed by the deed, the grantee had elected to relinquish his right to all other real property which had been owned by his father and mother.

The plaintiff contends that the defendants, by electing to accept the benefits of the consent judgment, are bound by this election so that the preemptive right must be enforced. Assuming that the doctrine of elections would be applicable, the defendants have not received sufficient benefits to make it applicable in this case.

The decision of the Court of Appeals is affirmed.

Affirmed.

Justice MEYER dissenting.

I dissent from the majority opinion because I do not agree that the preemptive right held by the Village Council of Pinehurst is subject to the rule against perpetuities. By strictly applying the rule to the preemptive right at issue in this case, the majority ignores the purpose and policy underlying the rule as well as the unsuitability of the rule to the transaction at issue here.

Concerned with the ability of royalty and landed gentry to control indefinitely the disposition of their real and personal property, the courts of England first began prohibiting long-term inalienability of property. The early English cases gave rise to the common law rule against perpetuities recognized by the majority

of American jurisdictions, including North Carolina. The underlying and fundamental purpose of the common law rule against perpetuities is the protection of society by allowing full utilization of land. As commonly noted, "[t]he rule [against perpetuities] evolved to prevent . . . property from being fettered with future interests so remote that the alienability of the land and its marketability would be impaired, preventing its full utilization for the benefit of society at large as well as of its current owners." *Anderson v. 50 E. 72nd St. Condominium*, 119 A.D.2d 73, 76, 505 N.Y.S.2d 101, 103 (1986), *appeal dismissed*, 69 N.Y.2d 743, 504 N.E.2d 700, 512 N.Y.S.2d 1032 (1987).

Although sound in its general prohibition of long-term inalienability of property, the rule against perpetuities is probably the most widely criticized principle of common law. The rule has been characterized as a labyrinth, *see* Jesse Dukeminier, *A Modern Guide to Perpetuities*, 74 Cal. L. Rev. 1867, 1867-68 (1986), inflexible, unduly harsh, and a trap for the unwary. W. Barton Leach, *Perpetuities in Perspective: Ending the Rule's Reign of Terror*, 65 Harv. L. Rev. 721, 721-24 (1952). Some have suggested that the rule, once beneficial, has outlived the reasons for its origins. *See Anderson*, 119 A.D.2d at 78, 505 N.Y.S.2d at 104 (comparing property ownership of "the postfeudal agrarian period in which the then progressive Rule Against Perpetuities had its genesis" with "the realities of contemporary commerce and economics" involved in the "recent emergence and widespread use of new and creative ownership arrangements of property"); W. Barton Leach, *Perpetuities: New Absurdity, Judicial and Statutory Correctives*, 73 Harv. L. Rev. 1318 (1960).

In comparatively recent years, courts have created a myriad of exceptions in an attempt to avoid the harshness of the rule's invalidation *in toto* of contingent future interests that may not vest within the period prescribed by the rule. Thus, courts have exempted from the rule rights of re-entry, possibilities of reverter, resulting trusts, and covenants running with the land. *Wong v. DiGrazia*, 60 Cal. 2d 525, 536 n.19, 386 P.2d 817, 825 n.19, 35 Cal. Rptr. 241, 249 n.19 (1963) (en banc); 61 Am. Jur. 2d *Perpetuities* § 28 (1981); 6 Lewis M. Simes & Allan F. Smith, *The Law of Future Interests* § 1201, at 88 (2d ed. 1956); W. Barton Leach, *Perpetuities in a Nutshell*, 51 Harv. L. Rev. 638, 647-48 (1938). Courts have also engrafted as exceptions to the applicability of

**VILLAGE OF PINEHURST v. REGIONAL INVESTMENTS OF MOORE**

[330 N.C. 725 (1992)]

the rule property transferred from one charity to another,[1] perpetual renewal options in leases, and commercial agreements. 50 Am. Jur. 2d *Landlord and Tenant* § 1169 (1970) (perpetual renewal options); Verner F. Chaffin, *The Rule Against Perpetuities As Applied to Georgia Wills and Trusts: A Survey and Suggestions for Reform*, 16 Ga. L. Rev. 235, 293-98 (1982) [hereinafter Chaffin] (charitable gifts); *see, e.g., Singer Co. v. Makad, Inc.,* 213 Kan. 725, 518 P.2d 493 (1974) (commercial lease).[2]

The most notable exceptions, however, concern the validity of preemptive rights, also called, *inter alia,* rights or options of first refusal. Despite the general recognition that the rule against perpetuities applies to contingent future interests in personal as well as real property, courts have uniformly upheld as valid and enforceable perpetual corporate charters, bylaws, or shareholders' agreements requiring shareholders desirous of selling their stock to afford the corporation, the other shareholders, or both the first right to purchase the stock. *See generally* J.P. Ludington, Annotation, *Validity of Restrictions on Alienation or Transfer of Corporate Stock,* 61 A.L.R.2d 1318 (1958). In addition, courts of various jurisdictions have in a number of different ways avoided applying the rule against perpetuities to preemptive rights to purchase both real and personal property.

In *Weber v. Texas Co.,* 83 F.2d 807 (5th Cir.), *cert. denied,* 299 U.S. 561, 81 L. Ed. 413 (1936), the Fifth Circuit Court of Appeals was confronted with determining the validity of a lease provision that granted to the lessee a preemptive right virtually unlimited in duration. Upholding this preemptive right, the Fifth Circuit reasoned:

---

1. N.C.G.S. § 36A-49 provides an even broader exception than that recognized by most jurisdictions and North Carolina cases decided prior to the effective date of the statute. Under the statute, the rule against perpetuities does not invalidate any "gift, grant, bequest or devise . . . to religious, educational, charitable or benevolent uses," irrespective of the transferor's and transferee's status as charitable entities. N.C.G.S. § 36A-49 (1991).

2. In addition, some states have ameliorated the harshness of the rule against perpetuities by adopting a wait-and-see approach, thereby invalidating only those contingent future interests that actually fail to vest within the period prescribed by the rule. *See Merchants Nat'l Bank v. Curtis,* 98 N.H. 225, 97 A.2d 207 (1953) (judicial adoption of wait-and-see); Chaffin, 16 Ga. L. Rev. at 346 (discussing the differences between the wait-and-see statutes enacted by ten states).

A few states have also extended the *cy pres* doctrine to "mitigate the destructive impact of the Rule Against Perpetuities." Chaffin, 16 Ga. L. Rev. at 350.

VILLAGE OF PINEHURST v. REGIONAL INVESTMENTS OF MOORE

[330 N.C. 725 (1992)]

The rule against perpetuities springs from considerations of public policy. The underlying reason for and purpose of the rule is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation, which is regarded at common law as a public evil.

The option [of first refusal] under consideration is within neither the purpose of nor the reason for the rule. . . . It amounts to no more than a continuing and preferred right to buy at the market price whenever the lessor desires to sell. This does not restrain free alienation by the lessor. He may sell at any time, but must afford the lessee the prior right to buy. The lessee cannot prevent a sale. His sole right is to accept or reject as a preferred purchaser when the lessor is ready to sell. The option is therefore not objectionable as a perpetuity.

*Id.* at 808 (citations omitted).

Since *Weber*, several courts have followed the Fifth Circuit's reasoning and have concluded that preemptive rights to purchase property are not subject to invalidation by the rule against perpetuities. *See Cambridge Co. v. East Slope Inv. Corp.*, 700 P.2d 537 (Colo. 1985) (en banc); *Shiver v. Benton*, 251 Ga. 284, 304 S.E.2d 903 (1983); *Barnhart v. McKinney*, 235 Kan. 511, 682 P.2d 112 (1984); *Terrell v. Messenger*, 428 So. 2d 1241 (La. Ct. App. 1983); *Anderson v. 50 E. 72nd St. Condominium*, 119 A.D.2d 73, 505 N.Y.S.2d 101; *Producers Oil Co. v. Gore*, 610 P.2d 772 (Okla. 1980); *Forderhause v. Cherokee Water Co.*, 623 S.W.2d 435 (Tex. Civ. App. 1981), *rev'd on other grounds*, 641 S.W.2d 522 (Tex. 1982); *Robroy Land Co. v. Prather*, 95 Wash. 2d 66, 622 P.2d 367 (1980) (en banc); *cf. Brooks v. Terteling*, 107 Idaho 262, 688 P.2d 1167 (1984) (upholding preemptive right as not unconscionable); *Hartnett v. Jones*, 629 P.2d 1357 (Wyo. 1981) (reciting its approval of *Weber* but concluding that a state statute made certain that the preemptive right at issue would vest within the period prescribed by the rule).

Some courts have applied the *Weber* analysis in part and have concluded that the rule against perpetuities does not apply to preemptive rights acquired in *commercial* or *governmental* transactions. *See Metropolitan Transp. Auth. v. Bruken Realty Corp.*, 67 N.Y.2d 156, 492 N.E.2d 379, 501 N.Y.S.2d 306 (1986); *Southern Pennsylvania*

*Transp. Auth. v. Philadelphia Transp. Co.*, 426 Pa. 377, 233 A.2d 15 (1967), *cert. denied*, 390 U.S. 1011, 20 L. Ed. 2d 161 (1968); *accord Joseph Schonthal Co. v. Sylvania*, 60 Ohio App. 407, 415, 21 N.E.2d 1008, 1012 (1938) ("Certainly no rule against perpetuities could ever be intended to apply to municipal corporations.").

Still other courts have developed other methods to avoid applying the rule against perpetuities to preemptive rights. *See Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61 (10th Cir.) (preemptive right creates a vested interest that is not subject to the rule against perpetuities), *cert. denied*, 355 U.S. 907, 2 L. Ed. 2d 262 (1957); *Dozier v. Troy Drive-In-Theaters, Inc.*, 265 Ala. 93, 89 So. 2d 537 (1956) (preemptive right creates an estate on a condition subsequent to which the rule against perpetuities does not apply); *Weitzmann v. Weitzmann*, 87 Ind. App. 236, 161 N.E. 385 (1928) (construing preemptive right as a personal right not subject to the rule against perpetuities); *Windiate v. Leland*, 246 Mich. 659, 225 N.W. 620 (1929) (preemptive right creates no interest in land and is therefore not subject to the rule); *Kershner v. Hurlburt*, 277 S.W.2d 619 (Mo. 1955) (preemptive right is a personal right not subject to the rule against perpetuities); *cf. Keogh v. Peck*, 316 Ill. 318, 147 N.E. 266 (1925) (concluding that an option creates no interest in land).

I agree with the majority of other jurisdictions that have concluded that the rule against perpetuities should not be strictly applied against all preemptive rights. As we noted in *Smith v. Mitchell*, 301 N.C. 58, 269 S.E.2d 608 (1980):

> [The common law prohibition of restraints on alienation] has always conflicted with another common law tenet that one who has property should be able to convey it subject to whatever condition he or she may desire to impose on the conveyance.
>
> Faced with this tension, the law has evolved in such a way that . . . *restraints on alienation are premissible [sic] where the goal justifies the limit on the freedom to alienate or where the interference with alienation in a particular case is so negligible that the major policies furthered by freedom of alienation are not materially hampered.*

*Id.* at 62, 269 S.E.2d at 611 (emphasis added) (citations omitted).

Applying the above-described principles enunciated in *Smith*, it becomes clear that the rule against perpetuities should not be

applied to the preemptive right at issue in this case. As we have previously stated, "the preemptive right is a useful tool for creating planned and orderly development." *Id.* at 63, 269 S.E.2d at 612.

> [A]ny interference of a preemptive right with freedom of alienation is so negligible that the major policies of utilization of wealth and economy of land control are not hampered. . . . [T]he minimal interference with alienability presented by a preemptive right does little violence to the primary reason for prohibiting restraints on alienation . . . .

*Id.* at 62-63, 269 S.E.2d at 611 (citations omitted). Where, as here, the preemptive right is held by a municipality, I submit that the policies favoring validity of the preemptive right clearly outweigh the minimal restraint imposed.

The purpose of the preemptive right at issue in this case provides additional justification for upholding it as valid and enforceable. As indicated in the majority opinion, the consent judgment entered into by the Village of Pinehurst and Pinehurst, Inc. granted to the Village Council of Pinehurst the right to purchase on behalf of its residents the sewer and water systems owned by Pinehurst, Inc. in the event that Pinehurst, Inc. decided to sell such systems. As recognized by N.C.G.S. § 160A-311, sewer and water systems are public enterprises. N.C.G.S. § 160A-311 (1987). The operation of such facilities by a municipality, like the Village of Pinehurst, provides a service to the public and presents important considerations of public concern and welfare. Applying the rule against perpetuities to the preemptive right at issue here defeats the policies underlying the rule because it invalidates an agreement, bargained for at arm's length, which promotes the public's interest in acquiring services necessary for the public health, safety, and welfare. *See Anderson,* 119 A.D.2d at 76, 505 N.Y.S.2d at 103 (stating that the purpose of the rule against perpetuities was for the benefit of society at large).

Without recognition of the purpose and policy underlying the rule against perpetuities, the majority today declares that our previous decision in *Smith* requires that the Court apply the rule against perpetuities to the preemptive right at issue here. However, a careful reading of *Smith* demonstrates that such is not the case. In *Smith,* we recognized the harm to be caused by blindly applying rules prohibiting restraints on alienation. Refusing to declare preemptive rights as invalid *per se,* we undertook an analysis of the pur-

poses for the common law prohibition of restraints on alienation and the goals justifying restrictions on alienation. In our analysis, we considered the degree that alienation was hindered by the preemptive right, the analogous character of preemptive rights to other restrictive devices upheld by the courts of our State, the nature of the transaction in which the preemptive right was acquired, as well as the necessity for such restrictive devices. After balancing these factors, we concluded that preemptive rights are valid as long as they do not amount to unreasonable restraints on alienation. Although in dicta we indicated that a preemptive right is valid only if its duration is limited to a period within the rule against perpetuities, we were not faced in *Smith* with the type of preemptive right involved in this case. Where, as here, we are confronted with a municipality's right to purchase all or a major portion of a business's assets for the purpose of serving the public's interest, there are additional factors that must be considered in determining the reasonableness of the preemptive right. Having considered all of the factors justifying the preemptive right in this case and having weighed them in light of the policies we enunciated in *Smith*, I conclude that the preemptive right in this case should be exempt from the rule against perpetuities.

Moreover, I cannot agree with the majority's conclusion that N.C.G.S. § 36A-49 does not exempt the preemptive right held by the Village Council of Pinehurst from application of the rule against perpetuities. N.C.G.S. § 36A-49 provides that "[n]o gift, grant, bequest or devise . . . to religious, educational, charitable or benevolent uses . . . shall be invalid . . . by reason of the same in contravening any statute or rule against perpetuities." N.C.G.S. § 36A-49 (1991). In this case, Pinehurst, Inc. granted to the Village Council the right to purchase its sewer and water systems *for the benefit of the residents* of the Village of Pinehurst. According to Chapter 160A of the North Carolina General Statutes, municipally owned sewer and water systems are public enterprises, the operation of which provides a service to the public. *See* N.C.G.S. §§ 160A-311, -312 (1987). In my opinion, the grant of this preemptive right was to a benevolent use within the meaning of N.C.G.S. § 36A-49 and is therefore exempt from the rule against perpetuities. The mere fact that the Village could operate the sewer and water systems for profit does not change that outcome.

I do not agree with the majority that the preemptive right held by the Village Council of Pinehurst is invalid as violative

of the rule against perpetuities. Having reviewed the terms of the preemptive right, I conclude that the preemptive right here is in all respects a reasonable restraint on alienation. Therefore, I dissent from the majority opinion and vote to reverse the Court of Appeals and remand this case to that court for further remand to the Superior Court, Moore County, for further proceedings.

Chief Justice EXUM joins in this dissenting opinion.