TOLLAND ENTERPRISES *v.* COMMISSIONER
OF TRANSPORTATION
(12454)

HEIMAN, FREEDMAN and CRETELLA, Js.

---

Argued March 30—decision released September 13, 1994

*Arnold Sbarge,* for the appellant (plaintiff).

*Lawrence G. Widem,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Carolyn K. Querijero,* assistant attorney general, for the appellee (defendant).

FREEDMAN, J. This is an appeal by the plaintiff, Tolland Enterprises, brought pursuant to General Statutes § 51-197a from the assessment of damages for the taking of its property by eminent domain pursuant to General Statutes §§ 13a-73 (b) and 13b-23. The defendant, the commissioner of transportation, determined the value for the purpose of the taking to be $16,060. The plaintiff applied to the Superior Court, pursuant to General Statutes § 13a-76, for reassessment of damages. The trial court found that the defendant had properly determined the value of the property for the purpose of the taking. On appeal, the plaintiff claims

that the trial court improperly (1) found that the rule against perpetuities[1] does not apply to the state for the purpose of invalidating a repurchase provision contained in a quitclaim deed in which the state was the grantor and (2) failed to award severance damages notwithstanding its finding that the repurchase provision was enforceable. We affirm the judgment of the trial court.

The trial court found the following facts. The state acquired a strip of land sixty feet in width containing 2.13 acres on Cottage Grove Road in Bloomfield in conjunction with its plan to build a highway bypassing the city of Hartford and connecting I-91 and I-84 to the south and west of Hartford with the continuation of I-91 north of Hartford. The plan was aborted, but the state retained title to the land in the belief that the bypass would be built in the future. Sometime after the state acquired the strip of land, the plaintiff began acquiring land along Cottage Grove Road for the development of an apartment complex. On October 18, 1963, the plaintiff purchased the sixty foot strip of land from the state "for one dollar and other valuable consideration." The quitclaim deed conveying the strip of land to the plaintiff contained the repurchase provision that is at issue in this appeal.

The repurchase provision states: "As part consideration for this deed, the Releasees herein hereby agree, for themselves, their heirs and assigns, that the State of Connecticut or the Town of Bloomfield of said State of Connecticut shall have the right to purchase said

---

[1] The plaintiff also claims that the repurchase provision is an unreasonable restraint on alienation. Here, however, the repurchase provision does not prohibit outright the sale of the property in question. Under our law, a restraint on alienation generally prohibits or penalizes the power of the owner to alienate his or her property freely. See *Olean* v. *Treglia,* 190 Conn. 756, 764, 463 A.2d 242 (1983). We conclude that the provision does not constitute an unreasonable restraint on alienation.

premises, with all improvements thereon, together with access thereto from the adjacent land of the Releasees herein in said Town of Bloomfield, for the sum of $16,060.00 in the event said premises shall be required by either said State of Connecticut or said Town of Bloomfield for highway purposes, upon giving the owner of record sixty (60) days notice in writing to that effect."

On January 16, 1991, twenty-seven years after the conveyance, the state notified the plaintiff that it intended to exercise its right to repurchase 2 acres of the 2.13 acre strip of land pursuant to the provision in the conveyance. Subsequent communications failed to resolve the matter, and, on September 4, 1991, the state filed a notice of condemnation and assessment of damages that declared that the land taken was necessary for widening Route 218, Cottage Grove Road. The commissioner assessed damages in accordance with the repurchase provision in the amount of $16,060.

The plaintiff appealed the assessment of damages to the Superior Court claiming that the assessment was inadequate and requesting reassessment of the damages. The defendant answered, raising the repurchase provision as a special defense. The plaintiff's reply to the special defense claimed that the repurchase provision is void because it violates the rule against perpetuities and also constitutes an unreasonable restraint against alienation. The plaintiff also claimed that it was entitled to recover severance damages, because the repurchase provision, if effective, would merely control the price of the land taken and not its claim for severance damages.

The trial court found as a matter of law that the repurchase provision created a repurchase option, and that in Connecticut a repurchase option must comply with the rule against perpetuities. See *Neustadt* v.

*Pearce,* 145 Conn. 403, 143 A.2d 437 (1958). The trial court stated, however, that the "rule, designed to restrain the aggrandizement of family dynasties during the middle ages by limiting the time during which the alienability of land could be curtailed, ought not to be applied to a governmental body without first concluding that the policy of the rule in promoting the unrestricted alienability of land will otherwise be seriously frustrated." The trial court concluded that "the rule against perpetuities ought not to be applied to invalidate a repurchase provision inserted into a conveyance by the state for the purpose of conserving the public exchequer in view of the likelihood that the land transferred will eventually be needed for a governmental purpose, such as widening a highway." Because the repurchase provision was enforceable, the trial court held that the damages for the taking of the strip of land were limited to the $16,060 specified in the repurchase provision.

"The decisive issue [on appeal] is whether the covenant giving the right to repurchase is enforceable . . . . The covenant purported to grant . . . a continuing option, unlimited as to time . . . . It attempted to create a contingent interest which might not vest until some uncertain date in the future. It falls clearly within the principle stated in *H. J. Lewis Oyster Co.* v. *West,* 93 Conn. 518, 530, 107 A. 138 [1919], and is void as violative of the rule against perpetuities."[2] *Neustadt* v. *Pearce,* supra, 145 Conn. 405. The state does not dispute that the repurchase option of this case is such a covenant. Neither of our appellate courts has addressed the question of whether the rule against per-

---

[2] "The rule against perpetuities states that '[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' J. Gray, The Rule Against Perpetuities (4th Ed. 1942), p. 191; *Connecticut Bank & Trust Co.* v. *Brody,* 174 Conn. 616, 623, 392 A.2d 445 (1978)." *Texaco Refining & Marketing, Inc.* v. *Samowitz,* 213 Conn. 676, 683, 570 A.2d 170 (1990).

petuities applies to the state for the purpose of invalidating a repurchase provision for the benefit of the state inserted in a conveyance by the state. We conclude that it does not.

The question of whether the rule against perpetuities applies to the state in this matter is a question of law. We, therefore, review this claim de novo. *Stiefel* v. *Lindemann,* 33 Conn. App. 799, 806, 638 A.2d 642 (1994); *McCullough* v. *Waterfront Park Assn., Inc.,* 32 Conn. App. 746, 750, 630 A.2d 1372 (1993).

"The underlying and fundamental purpose of the common law rule against perpetuities is the protection of society by allowing full utilization of land. As commonly noted, '[t]he rule [against perpetuities] evolved to prevent . . . property from being fettered with future interests so remote that the alienability of the land and its marketability would be impaired, preventing its full utilization for the benefit of society at large as well as of its current owners.' " *Village of Pinehurst* v. *Regional Investments of Moore,* 330 N.C. 725, 732, 412 S.E.2d 645 (1992).

"The compelling reasons for the rule against perpetuities are believed to be these. First, it strikes a fair balance between the satisfaction of the wishes of members of the present generation to tie up their property and those of future generations to do the same. The desire of property owners to convey or devise what they have by the use of trusts and future interests is widespread, and the law gives some scope to that almost universal want. But if it were permitted without limit, then members of future generations would receive this property already tied up with future interests and trusts, and could not give effect to their desires for the disposition of the property. Thus, the law strikes a balance between these desires of the present generation and of future generations.

"A further reason is that, other things being equal, society is better off, if property is controlled by its living members than if controlled by the dead. Thus, one policy back of the rule against perpetuities is to prevent too much dead hand control of property." L. Simes & A. Smith, The Law of Future Interests (2d Ed. 1956) § 1117.

While the theories supporting the application of the rule against perpetuities clearly apply to individuals, we conclude that its application to the state is unjustified. Unlike persons, the state is perpetually in existence. Thus, the effect of future interests in yet unborn or contingent remaindermen, or of control of property by those long dead, are not legitimate concerns where the state is involved in the transaction. In addition, the state could have retained the land pending future construction of the bypass; instead, it chose to convey the land to a private party so that it could be utilized until such time as the state or the town of Bloomfield requires it for highway purposes.

Cases from other jurisdictions lend strong support to our conclusion that the rule against perpetuities does not apply to the state for the purpose of invalidating a repurchase provision inserted into a conveyance by the state.

In *Southeastern Pennsylvania Transit Authority* v. *Philadelphia Transit Co.,* 426 Pa. 377, 233 A.2d 15 (1967), the Pennsylvania Supreme Court held that the rule against perpetuities does not apply to an option held by the city of Philadelphia for the purchase of a privately owned transportation system. The court held, in part, that for reasons of public policy, and under the particular facts of the case, the rule against perpetuities should not operate on the city of Philadelphia's right to purchase.

In *Warren* v. *Leesburg,* 203 So. 2d 522, 526 (Fla. 1967), the city of Leesburg instituted an action to enforce the repurchase provision in a deed. The trial court found in favor of the city. The defendant claimed, for the first time in a petition for a rehearing, that the repurchase option in the original deed from the city was void because it violated the rule against perpetuities. The petition was denied without comment and the Florida District Court of Appeals recognized that the claim was not reviewable because it was not timely raised. Nevertheless, the court went on, noting the risk that its opinion may be considered obiter, to state: "There is also grave doubt in our opinion as to whether or not public bodies such as incorporated municipalities are included within the ban of the rule against perpetuities. Perpetual charitable trusts are not subject to the rule. While not strictly analogous, property owned by a City is in a very real sense so owned and held for the benefit of the public. If perpetual charitable trusts are not 'within the spirit of the rule' it would seem that by the same reasoning a public body would be in the same category." Id., 526.

In *West Indian Co.* v. *Government of the Virgin Islands,* 844 F.2d 1007 (3d Cir. 1988), the United States Court of Appeals for the Third Circuit considered whether an agreement between the West Indian Company, and the government of the Virgin Islands should be considered contractually binding on the legislature. In 1913, Denmark, then the sovereign of the Virgin Islands, granted the West Indian Company a right of reclamation of certain lands. The agreement did not provide for any time limitations in which the West Indian Company could exercise its right of reclamation. In 1968, a dispute arose regarding the treaty granting the right of reclamation and an agreement was entered into to settle the dispute. The case addressed the enforceability of the latter agreement.

Because the court resolved the issue under the settlement agreement, it did not address the assertion that the 1913 grant of the right of reclamation to the West Indian Company violated the rule against perpetuities. Nonetheless, the court went on to state in dicta: "We doubt that the act of a sovereign like Denmark's concession to [the West Indian Company] can violate the rule against perpetuities . . . ." Id., 1017.

In *Joseph Schonthal Co.* v. *Sylvania,* 60 Ohio App. 407, 21 N.E.2d 1008 (1938), an action to quiet title to certain real estate, the trial court found in favor of the defendant. The issue was whether an executory limitation over to the village upon cessation of the use of the premises in accordance with the deed violated the rule against perpetuities. The court held that the rule against perpetuities existing in Ohio at the time of the creation of the deed in question was not violated by the deed. The court, however, went on to state: "Certainly no rule against perpetuities could ever be intended to apply to municipal corporations. On the contrary, they are designed and intended to be perpetual."[3] Id., 415.

Thus, we conclude that the rule against perpetuities does not apply to the state for the purpose of invalidat-

[3] For a view to the contrary, see *Haggerty* v. *Oakland,* 161 Cal. App. 2d 407, 326 P.2d 957 (1958), where the California Appellate Court applied the rule against perpetuities against a municipality. *Haggerty* involved a lease held by the city of Oakland to private property that was to run for ten years after the completion of construction of the building that was the subject of the lease. The court found the lease void because it could violate the rule against perpetuities. Professor W. Barton Leach wrote an article criticizing the case; see W. Leach, "Perpetuities: New Absurdity, Judicial and Statutory Correctives," 73 Harv. L. Rev. 1318 (1960); in which he stated: "The Rule Against Perpetuities is a device for protecting the public interest against private settlements which unduly tie up the basic resources of the community. But in this case the city *is* the public. It is at least arguable that the Rule should not apply at all to dispositions made by duly constituted public bodies. The judge-made Rule was never conceived as a limitation upon the sovereign, and the California constitution, incorporating the common-law Rule, should not be construed as a limitation on action by the state or any of its subdivisions." (Emphasis in original.) Id., 1321.

ing a repurchase provision contained in a quitclaim deed in which the state was the grantor.

The plaintiff next claims that the trial court improperly failed to award severance damages notwithstanding its finding that the repurchase provision inserted in the conveyance was enforceable. Specifically, the plaintiff claims that the taking by the state was a partial taking and, therefore, the plaintiff is entitled to the difference between the value of the whole parcel prior to the taking and the value of the property remaining as severed after the taking. We do not agree.

Severance damages compensate for the diminution in the fair market value of the remainder of the property owner's land, which is both unique to that land and arises as the direct and immediate result of the taking of a portion of the lands by the condemning authority. See *Tandet* v. *Urban Redevelopment Commission,* 179 Conn. 293, 298–99, 426 A.2d 280 (1979).

The plaintiff attempts to avoid the consequences of its agreement embodied in the repurchase provision by claiming that the damages it is seeking are for the remainder of the property and not for the strip of land taken by the state. At the time of the conveyance to the plaintiff, the plaintiff agreed to return the land to the state for $16,060. In the meantime, the plaintiff has enjoyed the use of the land and the benefit it has provided to the surrounding property for the past twenty-seven years. To award the plaintiff severance damages would contravene the agreement set forth in the repurchase provision and thus penalize the state for enforcing its rights.

We conclude that the trial court properly found that the plaintiff was not entitled to severance damages.

The judgment is affirmed.

In this opinion the other judges concurred.