RICH, RICH & NANCE, a NC General Partnership, Plaintiff v. CAROLINA
CONSTRUCTION CORPORATION, Defendant

No. COA00-96

(Filed 19 June 2001)

**Vendor and Purchaser— real estate sale contract—availability fee after lots sold—rule against perpetuities**

The trial court erred by awarding plaintiff specific performance of the obligations under the addendum of the parties' real estate sale contract requiring defendant to pay plaintiff an availability fee of $600.00 on each of the thirty seven lots, into which the parcel of land may or may not ultimately be divided, after each lot was sold because: (1) the purported lien was not a vested

interest since at the time of its creation plaintiff's right to payment did not amount to an immediate right of present enjoyment or a present fixed right of future enjoyment; and (2) plaintiff's interest in the property is void since it violates the rule against perpetuities by failing to set a time limit when these conditions must be met.

Judge TYSON dissenting.

Appeal by defendant from judgment entered 31 August 1999 by Judge Cy A. Grant in Superior Court, Pasquotank County. Heard in the Court of Appeals 15 February 2001.

*Trimpi, Nash & Harman, L.L.P., by John G. Trimpi, for plaintiff-appellee.*

*The Twiford Law Firm, L.L.P., by Branch W. Vincent, III, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Rich, Rich & Nance (plaintiff) instituted this action on 15 June 1998 seeking specific performance of an agreement set forth in an addendum to a real estate sale contract.

Plaintiff owned a parcel of land consisting of 11.89 acres commonly known as "Walking Horse Subdivision," which had preliminary, but not final plat approval. Plaintiff entered into a contract with LFM Properties (LFM) on 5 August 1994, wherein LFM agreed to purchase the property at a price of $75,000.00. Pursuant to discussions of the parties regarding the ultimate use of the property, plaintiff anticipated that at some date in the future, LFM would convey the property to Carolina Construction Corporation (defendant), which would ultimately develop and subdivide the property into thirty-seven lots for single-family residences. Accordingly, on 29 August 1994, the parties executed the following addendum to the contract between plaintiff and LFM:

At the close of each of the 37 (thirty seven) lots of Walking Horse subdivision, LFM Properties and or Carolina Construction Corporation, whomever is owner, agrees to pay to Rich, Rich and Nance the sum of $600.00 (Six Hundred Dollars) per lot as an availability fee. These fees shall survive any and all listing agreements and shall remain as a lien against the lots until they are paid. The sale or transfer of these lots from LFM Properties to

Carolina Construction Corporation is exempt from the fee until such time as Carolina Construction Corporation sells the property improved or unimproved.

The addendum further provided that:

Upon the subject property being developed by LFM Properties, or its successor in interest, a Declaration of Restrictive Covenants shall be recorded with the subdivision plat. The Declaration shall refer to the above-mentioned fee agreement and provide record notice thereof.

Lucien O. Morrisette, a principal stockholder of LFM and defendant, signed the addendum on behalf of each corporation.

Plaintiff and LFM subsequently modified the sale contract in terms of the acreage conveyed and responsibilities in connection with the drainage. The $75,000.00 purchase price and the $600.00 per lot availability fee remained unchanged. Plaintiff and LFM closed the sale of the property on 28 April 1995.

LFM conveyed the property to defendant on 30 May 1997. Defendant subdivided the property into thirty-eight lots and changed the name of the development to Carolina Village. On 22 April 1998, defendant sold one of the lots in the subdivision, but failed to pay plaintiff the $600.00 availability fee, as required by the addendum. When plaintiff thereafter demanded the fee payment, defendant refused, indicating that it was not bound, and therefore, would not honor the agreement contained in the addendum.

Plaintiff filed an action against defendant for specific performance of the obligations under the addendum. The matter was tried before the trial judge on 2 August 1999. At the time of trial, defendant had sold nine lots in the subdivision without paying any of the availability fees. The trial court, after considering all the evidence, entered a judgment awarding plaintiff $5,400.00, the fees due for the nine lots sold. The court further ordered defendant to "pay the balance of $16,800.00 when and as each of the 28 additional lots in Carolina Village are sold by paying to plaintiff the sum of $600.00 upon the closing of each lot sale[.]" Additionally, the judgment provided that "[i]n the event defendant sells the entire tract without selling each of the 28 remaining lots, then the entire balance then due would become immediately payable." Defendant moved pursuant to Rules 59 and 60 of the Rules of Civil Procedure for reconsideration and for relief from

**RICH, RICH & NANCE v. CAROLINA CONSTR. CORP.**

[144 N.C. App. 303 (2001)]

the court's decision, which motions the court denied. Defendant gave timely notice of appeal to this Court.

---

Defendant contends that the fee arrangement contained in the addendum is unenforceable for several reasons. However, because we believe that plaintiff's interest in the property is void, in that it violates the rule against perpetuities, we limit our discussion to this dispositive issue.

The rule against perpetuities provides that:

[N]o devise or grant of a future interest in property is valid unless title thereto must vest, if at all, not less than twenty-one years, plus the period of gestation, after some life or lives in being at the time of the creation of the interest.

*Coble v. Patterson,* 114 N.C. App. 447, 452, 442 S.E.2d 119, 121 (1994). Where the interest or right does not refer or relate to a "life in being," also known as a "validating life," the perpetuities period is said to be "in gross," which means the period is simply twenty-one years. *Rodin v. Merritt,* 48 N.C. App. 64, 67, 268 S.E.2d 539, 541 (1980). The validity of the interest is measured from the execution of the contract. *Id.* at 68, 268 S.E.2d at 542. Thus, if at the moment of conveyance, there is any possibility that the interest will neither vest nor fail within the perpetuities period, the interest is void. *Coble,* 114 N.C. App. at 452, 442 S.E.2d at 121.

The rule against perpetuities applies only to non-vested or contingent future interests. *Thornhill v. Riegg,* 95 N.C. App. 532, 536, 383 S.E.2d 447, 449 (1989). "A future interest is vested 'when there is either an immediate right of present enjoyment or a present fixed right of future enjoyment.' " *Id.* (quoting *Joyner v. Duncan,* 299 N.C. 565, 569, 264 S.E.2d 76, 82 (1980)). A future interest is contingent, or has yet to vest, when it is "*either* subject to a condition precedent (in addition to the natural expiration of prior estates), *or* owned by unascertainable persons, *or both.*" *Rawls v. Early,* 94 N.C. App. 677, 680, 381 S.E.2d 166, 168 (1989) (quoting T. Bergin & P. Haskell, *Preface to Estate in Land and Future Interests* at 73 (1984) (emphasis in original)).

In the instant case, plaintiff purports to retain a lien in the amount of $600.00 on each of the thirty-seven lots into which the parcel may or may not ultimately be divided. We conclude that the purported

RICH, RICH & NANCE v. CAROLINA CONSTR. CORP.

[144 N.C. App. 303 (2001)]

"lien" was not a vested interest, because at the time of their creation, plaintiff's right to payment did not amount to an "immediate right of present enjoyment or a present fixed right of future enjoyment." *Thornhill*, 95 N.C. App. at 536, 383 S.E.2d at 449 (quoting *Joyner*, 299 N.C. at 569, 264 S.E.2d at 82). The liens were subject to several conditions precedent: (1) LFM had to convey the property to defendant; (2) Defendant had to develop the property and divide it into thirty-seven individual lots (and construct houses on each); and (3) Defendant had to convey each of the thirty-seven lots to a subsequent purchaser. The agreement sets no time within which these conditions must be met, and thus, creates a right that is perpetual in nature. Moreover, while the law imposes a reasonable time for performance of the obligations under a contract, *see Metals Corp. v. Weinstein*, 236 N.C. 558, 73 S.E.2d 472 (1952), a reasonable time for performing the obligations under the present agreement is not necessarily within the twenty-one year perpetuities period. *Rodin*, 48 N.C. App. at 68, 268 S.E.2d at 541.

In *Village of Pinehurst v. Regional Investments of Moore*, 330 N.C. 725, 412 S.E.2d 645 (1992), our Supreme Court held that a right of first refusal to purchase sewage and water systems, which right was not limited in duration, violated the rule against perpetuities. In response to plaintiff's contention that the rule had no place in business transactions, the Court noted:

> We do not believe we should make an exception to the rule because the real property which the plaintiff desires to purchase is used in the operation of a business. If a restraint on alienation is bad, we see no reason why it is made good because it is part of a commercial transaction or the property is used for business purposes.

*Id.* at 729, 412 S.E.2d at 646-47. The underlying purpose of the rule being to prevent the restraint on alienation, we believe that the perpetual encumbrance on the property which plaintiff seeks to enforce is the sort of impediment to marketability that the rule was meant to prevent. Therefore, we hold that plaintiff's interest under the addendum must fail, and entry of judgment in plaintiff's favor was error.

For the foregoing reasons, we reverse the judgment of the trial court and remand this matter for entry of judgment in favor of defendant.

RICH, RICH & NANCE v. CAROLINA CONSTR. CORP.

[144 N.C. App. 303 (2001)]

Reversed and remanded.

Judge MARTIN concurs.

Judge TYSON dissents.

TYSON, Judge dissenting.

I respectfully dissent from the majority's opinion as I would hold that the Rule Against Perpetuities ("RAP") does not render the contract and addendum in this case void. The majority applies the RAP to void a contract provision for "deferred compensation" found in a land sales contract. I would hold that the deferred compensation fee arrangement does not violate the RAP because: (1) the RAP does not apply because there is no restraint on alienation or marketability of the property as proscribed by the Rule, and (2) it is inequitable to allow defendant to own and sell the property acquired by deed from plaintiff, yet avoid an essential term of the acquisition.

## 1. No Restraint on Marketability or Alienation

[W]hen one attempts to sort out the applications of the Rule to interests <u>other than</u> the traditional future interests associated with gratuitous transfers, he quickly encounters a set of seemingly contradictory holdings. In contrast to the usual perpetuities cases on gifts, wills and trusts, in which a doctrinaire application of the Rule usually results in the correct 'answer', in the commercial interest cases a logical approach based on the face of the Rule does not always yield a predictably correct result. Rather, one must look to some ad hoc reasons behind the black letter of the rule.

Ronald C. Link, *The Rule Against Perpetuities in North Carolina*, 57 N.C.L. Rev. 727, 804 (1979) (emphasis supplied).

The underlying reason behind the Rule Against Perpetuities is "the protection of society by allowing full utilization of land." *Village of Pinehurst v. Regional Investments of Moore*, 330 N.C. 725, 732, 412 S.E.2d 645, 648 (1992) (Meyer, J., dissenting). "The rule evolved to prevent property from being fettered with future interests so remote that the <u>alienability</u> of the land and its <u>marketability</u> would be impaired, preventing its full utilization." *Id.* (emphasis supplied) (citation omitted). In *Rodin v. Merritt*, 48 N.C. App. 64, 68, 268 S.E.2d

539, 542, *disc. rev. denied,* 301 N.C. 402, 274 S.E.2d 226 (1980), this Court wrote:

> The Rule grew up as a limitation on family dispositions of property, and the measuring stick of lives in being plus 21 years is well adapted to disposition of property by will and other family gift transactions. However, it is difficult to perceive that the same reasons for its creation would have any application to today's sophisticated, arms-length commercial real estate transactions. We find it difficult to believe that either lives in being or 21 years have much relevance to business and their affairs.

*Cf. Village of Pinehurst, supra,* (a preemptive right will not be excluded from the RAP because the transaction is commercial in nature). Applying these principles to the present case, it is clear that the addendum to the contract providing for the "deferred compensation fee" to be paid upon the sale of each lot, does not affect the alienability or marketability of the property.

The trial court made the following findings of fact:

4. Defendant executed the addendum calling for the $600.00 per lot fees at the advice of its attorney in anticipation that it would acquire the property from LFM Properties and build residential houses on that portion of the property which could be developed.

\* \* \*

6. At the time of closing on April 25, 1995 the parties mutually agreed and intended that the $600.00 fee would be paid when each of the 37 lots sold.

\* \* \*

9. On April 22, 1998 defendant conveyed a lot and did not pay plaintiff the sum of $600.00 dollars as required by the agreement.

10. On April 22, 1998 defendant did not intend to pay plaintiff this $600.00 per lot fee on any of the lots it sold or would sell in the subdivision now known as Carolina Village.

\* \* \*

12. Nine lots have been sold thus far in the first phase of the subdivision.

The parties clearly contemplated and agreed to the fee as a method for payment of deferred compensation to the plaintiff. The require-

ment that defendant pay the "deferred fee" to plaintiff upon the sale of each lot does not hinder defendant's ability to market or alienate the lots. Based on these facts, I would hold that the RAP is inapplicable to this "deferred compensation fee" arrangement.

Such a holding is consistent with our Supreme Court's holding in *Village of Pinehurst, supra.* In *Village of Pinehurst* the Supreme Court held that a municipality's preemptive right to purchase certain water and sewer systems was void under the RAP. The municipality argued, *inter alia,* that "there should be an exception to the application of the Rule Against Perpetuities . . . because the preemptive right is for the purchase of a business." *Village of Pinehurst,* 330 N.C. at 728, 412 S.E.2d at 646. Rejecting this argument, the Supreme Court held that "[i]f a restraint on alienation is bad, we see no reason why it is made good because it is part of a commercial transaction or the property is used for business purposes." *Id.* at 729, 412 S.E.2d at 646-47 (emphasis supplied). A preemptive right, like the one in *Village of Pinehurst,* is a "restraint on the alienability of property in that it has the potential to deter would-be buyers by creating uncertainty and unwillingness to invest time and energy into purchasing the burdened property." *Village of Pinehurst v. Regional Investments of Moore: Perpetuating the Rule Against Perpetuities in the Realm of Preemeptive Rights-North Carolina Refuses to Accept an Exception to the Rule,* 71 N.C. Law Rev. 2115, 2130 (1992). In the present case, the deferred fee arrangement does not impose a similarly offensive "restraint on alienation" on the defendant. It is merely an agreed upon means to compensate plaintiff for the purchase of its property.

Further, in *Smith v. Mitchell,* 301 N.C. 58, 62, 269 S.E.2d 608, 611 (1980), our Supreme Court wrote:

the policy absolutely favoring alienability has always conflicted with another common law tenet that one who has property should be able to convey it subject to whatever condition he or she may desire to impose on the conveyance. *Id.* at p. 2380. *See also* J. Webster, *Real Estate Law in North Carolina* § 344 at 432 (1971).

Faced with this tension, the law has evolved in such a way that some direct restraints on alienation are permissible where the goal justifies the limit on the freedom to alienate, 4 *Restatement of the Law of Property, Introductory Note, supra* at p. 2380, or where the interference with alienation in a particular case is <u>so</u>

negligible that the major policies furthered by freedom of alienation are not materially hampered, *id.* Thus the general rule is that a restraint on alienation which provides that the property cannot be alienated, a disabling restraint, Simes & Smith, supra at 1131, *Restatement of the Law of Property* § 404, is *per se* invalid, Simes & Smith, *supra* at § 1137; *Restatement of the Law of Property* § 406, while restraints which provide only that someone's estate may be forfeited or be terminated if he alienates, or that provides damages must be paid if he alienates, may be upheld if reasonable. *Restatement of the Law of Property* § 406. (emphasis supplied).

### 2. Estoppel

Recognizing a quasi-estoppel argument to bar the application of the RAP, the *Smith* Court wrote:

> In *Pure Oil Co. v. Baars*, 224 N.C. 612, 31 S.E.2d 854 (1944), the grantor deeded land to defendants but retained an option to repurchase. Defendants asserted the option was void [as violative of the RAP]. The Court upheld the option and refused to void it because it was 'an integral part of the transaction and it would be inequitable to allow the defendants to claim the property under deed . . . and at the same time annul the essential terms of its acquisition. If the option is to go out so must the deed which induced it.'

*Smith,* 301 N.C. at 63, 269 S.E.2d at 612; *Cf. Village of Pinehurst,* 330 N.C. at 730, 412 S.E.2d at 647 ("Assuming estoppel can bar the application of the rule against perpetuities, the benefits accepted must be more substantial than were accepted in this case to support an estoppel."). In the present case, defendant accepted the deed to the property from plaintiff and benefitted from the sale of portions of the property to others. The trial court found that defendant had alienated nine of the thirty-seven lots without payment of the agreed upon fees to the plaintiff. Defendant now wishes to avoid one of the essential terms of its acquisition of the property.

The majority's holding is contrary to precedent, and inequitable to plaintiff. I would hold that the deferred compensation fee arrangement does not violate the RAP because: (1) it is not a restraint on alienation or marketability of the property as proscribed by the Rule, and (2) it is inequitable to allow defendant to own and to sell the property acquired from plaintiff, yet avoid an essential term of the acquisition.

After review, I find all of defendant's assignments of error without merit. Therefore, I dissent from the majority's holding and would affirm the decision of the learned trial court.