RICH, RICH & NANCE, A NC GENERAL PARTNERSHIP V. CAROLINA CONSTRUCTION
CORPORATION

No. 378A01

(Filed 1 February 2002)

**Vendor and Purchaser— rule against perpetuities—deferred compensation contract for real estate sale**

The rule against perpetuities did not prevent the enforcement of an addendum to a real estate sales contract which provided that an "availability fee" would be paid upon each sale of a lot after the property was subdivided. The fee was a means of deferred compensation and did not relate in terms of title to any existing, underlying property. There was no property to which any interest could vest, and thus no devise of a future interest, so that the policies underlying the rule were not violated. This comports with recent statutory provisions excluding certain kinds of transactions from the Uniform Statutory Rule Against Perpetuities, which was adopted after the date of the sales contract at issue here.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 144 N.C. App. 303, 548 S.E.2d 541 (2001), reversing a judgment entered 31 August 1999 by Grant (Cy A.), J., in Superior Court, Pasquotank County, and remanding for entry of judgment in favor of defendant. Heard in the Supreme Court 15 October 2001.

*Trimpi, Nash & Harman, L.L.P., by John G. Trimpi, for plaintiff-appellant.*

*The Twiford Law Firm, L.L.P., by Branch W. Vincent, III, for defendant-appellee.*

LAKE, Chief Justice.

The sole question presented for review in this case is whether the rule against perpetuities prevents enforcement of contractual rights found in an addendum to a real estate sales contract providing for a $600 "availability fee" to be paid upon the sale of each lot in a subdivision. The Court of Appeals held that such an agreement violates the rule against perpetuities and, therefore, is unenforceable. *Rich, Rich & Nance v. Carolina Constr. Corp.*, 144 N.C. App. 303, 307, 548

S.E.2d 541, 544 (2001). For the reasons set forth below, we reverse the decision of the Court of Appeals and remand the case to that court for consideration of defendant's additional assignments of error not addressed by the Court of Appeals.

Rich, Rich and Nance, a North Carolina general partnership, owned an 11.89-acre parcel of land known as "Walking Horse Subdivision" in Elizabeth City, North Carolina. On 29 August 1994, plaintiff entered into a contract with LFM Properties to sell this parcel. Based upon their previous negotiations, plaintiff anticipated that at some date in the future LFM Properties would convey its interest in the property under the contract to defendant, which would ultimately subdivide and develop the property into thirty-seven single-family residential lots. Also, on 29 August 1994, LFM Properties and plaintiff executed an addendum to the contract which provided as follows:

> At the close of each of the 37 (thirty-seven) lots of Walking Horse subdivision, LFM Properties and or Carolina Construction Corporation, whomever is owner, agrees to pay to Rich, Rich and Nance the sum of $600.00 (Six Hundred Dollars) per lot as an availability fee. These fees shall survive any and all listing agreements and shall remain as a lien against the lots until they are paid. The sale or transfer of these lots from LFM Properties to Carolina Construction Corporation is exempt from the fee until such time as Carolina Construction Corporation sells the property improved or unimproved.

Plaintiff thus anticipated a total payment from defendant of $97,200: $75,000 at the closing and, based on the addendum agreement, $22,200 over time as the lots in the subdivision were sold.

On 28 April 1995, the sale of the proposed Walking Horse Subdivision closed, and the deed was recorded. Plaintiff sold only 9.38 acres to defendant, but the price and terms of the agreement remained the same. Apparently, plaintiff retained 2.51 acres of the original tract because of its need for an additional drainage area servicing its adjacent development project. Also, at the closing, the parties added a second clause to the addendum that called for inclusion of the availability fee in future restrictive covenants. It stated:

> Upon the subject property being developed by LFM Properties, or its successor in interest, a Declaration of Restrictive Covenants shall be recorded with the subdivision

plat. The Declaration shall refer to the above-mentioned fee agreement and provide record notice thereof.

The parties jointly referred to the deferred money as an "availability fee." However, plaintiff characterized the money owed from the addendum as a deferred portion of the purchase price, an accommodation to the buyer and an interest-free loan until the lots were sold. There are no foreclosure or default terms or acceleration clauses in the addendum with regard to nonpayment. At trial, the president of defendant corporation acknowledged that the arrangement would defer a portion of the purchase price until his corporation could afford to pay it. He also stated that on the day of the closing, he signed the second part of the addendum and that, at the time, he believed the corporation was obligated to pay the $600 per lot fee.

On 30 May 1997, as anticipated by the parties, defendant took title to the property upon delivery of a general warranty deed from LFM Properties, which deed was recorded. There were no exceptions to or restrictions upon this title. Defendant began to develop the property and prepared and recorded restrictive covenants. These covenants did not make reference to the availability fee. The availability fee or deferred payment arrangement mentioned in the first part of the addendum was never recorded. Defendant renamed the development "Carolina Village" and redesigned the subdivision to include thirty-eight lots, instead of the original thirty-seven.

Defendant sold the first lot in Carolina Village on 22 April 1998 and did not pay the fee allegedly owed to plaintiff. Plaintiff, on 15 June 1998, brought suit for breach of contract and sought $600 in damages, alleging anticipatory repudiation and asking for the balance due of $22,200. Plaintiff also sought to require defendant to reference the availability fee in the restrictive covenants and to create a judicial lien on the remaining lots in the subdivision. At the time of trial, only twelve lots had been platted, and defendant had sold nine lots. Approximately 6.9 acres remained undivided.

The trial court entered judgment for plaintiff for monetary damages in the amount of $5,400 based only on defendant's breach of contract in failing to pay the $600 for each of the nine lots then sold. The trial court also provided in its judgment that the $16,800 balance was due in $600 increments as each of the twenty-eight possible remaining lots was sold and, if the undeveloped part of the tract was sold, the entire balance would then be due. In essence, the trial court viewed the availability fee as a deferred portion of the contract price

and did not consider the rule against perpetuities applicable. The trial court did not allow plaintiff to recover on its anticipatory repudiation theory, nor did it require defendant to reference the arrangement in the restrictive covenants or declare a judicial lien.

On appeal, the Court of Appeals held that the trial court's ruling was error, concluding that the rule against perpetuities prevented the enforcement of the addendum. The court ruled that the purported "lien" was not a vested interest, and thus the rule applied. *Rich, Rich & Nance*, 144 N.C. App. at 306-07, 548 S.E.2d at 543-44. The court stated that "[t]he underlying purpose of the rule being to prevent the restraint on alienation, we believe that the perpetual encumbrance on the property which plaintiff seeks to enforce is the sort of impediment to marketability that the rule was meant to prevent." *Id.* at 307, 548 S.E.2d at 544.

On appeal before this Court, the sole issue for our review is whether the rule against perpetuities prevents plaintiff from enforcing against defendant the contractual rights found in the addendum and thus collecting its deferred payments or the availability fee. Plaintiff asserts that the availability fee is merely a contractual provision and that the rule does not apply because the addendum does not restrain alienability and is outside the policy parameters that would invoke the rule. We agree and conclude that the rule does not prevent enforcement of the contractual rights found in the addendum.

As it has evolved in North Carolina, the rule against perpetuities provides as follows:

> No devise or grant of a future interest in property is valid unless the title thereto must vest, if at all, not later than twenty-one years, plus the period of gestation, after some life or lives in being at the time of the creation of the interest. If there is a possibility such future interest may not vest within the time prescribed, the gift or grant is void.

*Parker v. Parker*, 252 N.C. 399, 402-03, 113 S.E.2d 899, 902 (1960). "Its primary purpose is to restrict the permissible creation of future interests and prevent undue restraint upon or suspension of the right of alienation." *Mercer v. Mercer*, 230 N.C. 101, 103, 52 S.E.2d 229, 230 (1949); *see also* Richard R. Powell, *Powell on Real Property* §§ 71.01[1], 72.01 (Michael Allan Wolf ed., Matthew Bender) (discussing the social purpose of the rule as the regulation of the creation of future interests and limiting restraints on alienation).

The rule was modified by statute in 1995, with the adoption of the Uniform Statutory Rule Against Perpetuities and the creation of a ninety-year wait-and-see period for vesting or termination of non-vested property interests. N.C.G.S. § 41-15 (1999); *see generally* N.C.G.S. ch. 41, art. 2 (1999). Chapter 41, article 2 is not applicable to the addendum in this case because the sales contract involved here predates the statute. We note, however, that the General Assembly has seen fit to exclude certain kinds of transactions from the statutory rule's application, including most nonvested property interests arising out of "nondonative transfers." N.C.G.S. § 41-18(1) (1999); *see also* Ronald C. Link & Kimberly A. Licata, *Perpetuities Reform in North Carolina: The Uniform Statutory Rule Against Perpetuities, Nondonative Transfers, and Honorary Trusts*, 74 N.C. L. Rev. 1783, 1799-1800 (1996) [hereinafter Link & Licata] (discussing the effects of N.C.G.S. § 41-18(1)). The exclusion of most nondonative transfers, i.e., commercial-type transactions, from the rule is contrary to the common law, but reflects a decision by the General Assembly that the rule "is a wholly inappropriate instrument of social policy to use as a control over such arrangements." N.C.G.S. § 41-18 official commentary; *cf.* Ronald C. Link, *The Rule Against Perpetuities in North Carolina*, 57 N.C. L. Rev. 727, 804-17 (1979) (discussing the application of the common-law rule to commercial interests in North Carolina and concluding that it is better not to apply the rule in such cases); Link & Licata, 74 N.C. L. Rev. at 1814-26 (discussing nondonative transfers and observing that "[t]he application of the Rule Against Perpetuities to nondonative (i.e., commercial) transactions has been particularly nettlesome in North Carolina").

Nevertheless, our common law rule against perpetuities does not exclude commercial interests from its application. *See, e.g., Village of Pinehurst v. Regional Invs. of Moore, Inc.*, 330 N.C. 725, 412 S.E.2d 645 (1992). However, the rule under the common law does not apply in all cases involving commercial transactions. Commercial transactions that do not violate the underlying policies behind the rule against perpetuities, as well as those involving mere contract provisions or present vested interests, do not fit under the umbrella of the common law rule. We need not decide the outer parameters of the rule as it relates to commercial transactions today, however, as we believe that the addendum addressed in the instant case clearly falls outside the intended scope of the rule.

The addendum to the real estate sales contract in the instant case is merely a contractual attempt at creative financing, and it does not

involve the kinds of nonvested future interests for which the rule is intended. Specifically, this contractual arrangement for the future payment of money does not relate in terms of title to any existing, underlying property. There is no property to which any "interest" may vest, and thus there can be no "devise or grant of a future interest" which will affect "the title thereto." *Parker*, 252 N.C. at 402-03, 113 S.E.2d at 902. Plaintiff alleges only that it is owed additional monetary compensation when the parcel of land is sold. Plaintiff cannot claim any interest, present or future, in the land itself, but holds only a continuing contractual right to money already owed for the land, if and when it is sold by defendant. Furthermore, the land underlying the dispute is clearly vested in defendant, and it is not subject to defeasance. Any past or future sale of the lots is not tied to the payment of the availability fee, and because the arrangement was never recorded, title to the land is not encumbered as security for the debt. Defendant's default at the time of each sale would not give rise to any foreclosure proceedings or specific performance remedies which would affect the title to the land as a whole or as to any of the subdivided lots.

As evidenced by their testimony, the principals for both plaintiff and defendant intended the "availability fee" of the addendum to be a means of deferred compensation for plaintiff. A partner from plaintiff partnership testified that he intended the fee to be an interest-free loan to defendant. Defendant's president admitted at trial that he felt obligated to pay the fee at the time of the making of the contract. Furthermore, the parties came to a negotiated, arms-length deal, evidenced by the sales contract and the twice-signed addendum. The designation in the contract for portions of the sale price to be paid as the originally planned thirty-seven lots were sold was merely a convenient way for both parties to allocate payment of the loan.

The addendum is most analogous to a due-on-sale clause, which clauses have been upheld by this Court as indirect or nonsubstantial restraints on alienation. *See Crockett v. First Fed. Sav. & Loan Ass'n of Charlotte*, 289 N.C. 620, 624-25, 224 S.E.2d 580, 584 (1976) (stating that "the due-on-sale clause is part of an overall contract that facilitates the original purchase and, thus, promotes alienation of property"). The principals of both plaintiff and defendant in the instant case appear to be competent to make a contract to suit their interests, and an addendum such as the one here, much like a due-on-sale clause, may be a valid part of any such agreement. *See generally id.* at 630, 224 S.E.2d at 587.

RICH, RICH & NANCE v. CAROLINA CONSTR. CORP.

[355 N.C. 190 (2002)]

The policy justifications underlying the rule against perpetuities are not implicated here, thus buttressing our view of this case. As noted in *Village of Pinehurst*, the rule " 'evolved to prevent . . . property from being fettered with future interests so remote that the alienability of the land and its marketability would be impaired, preventing its full utilization for the benefit of society at large as well as of its current owners.' " *Village of Pinehurst*, 330 N.C. at 732, 412 S.E.2d at 648 (Meyer, J., dissenting) (quoting *Anderson v. 50 E. 72nd St. Condo.*, 119 A.D.2d 73, 76, 505 N.Y.S.2d 101, 103 (1986), *appeal dismissed*, 69 N.Y.2d 743, 504 N.E.2d 700, 512 N.Y.S.2d 1032 (1987)). No such restraint on marketability or alienation occurs in the instant case.

Plaintiff cannot restrict or prohibit the sale of the lots or land. Defendant is free to sell or hold the tract as it sees fit. Such a contractual agreement hardly seems commensurate with the types of restraint on alienation contemplated by the rule. Defendant's subsequent redesign of the planned subdivision, and its addition or subtraction of residential lots, demonstrates that it is free to develop and market the land as it sees fit. The payment obligation is not tied to a specific part of the property. If the contract is found to be valid, the total amount owed would not change based on the number of lots eventually created and sold.

Defendant has not demonstrated that the payment arrangement provided for in the addendum, and based on the subsequent sale of the land, hinders its ability to market or alienate the property in any way. Defendant has, in fact, sold nine lots in Carolina Village. Plaintiff has no claim on these lots and now seeks only money from defendant. The policy concerns underlying the rule are not present here. If anything, the addendum had the opposite effect, aiding the original alienation or sale of the land and allowing defendant to purchase the parcel at a lower initial price by utilizing, in effect, an interest-free loan. The contract is thus not objectionable as a perpetuity and is therefore not subject to the rule. *See generally Duff-Norton Co. v. Hall*, 268 N.C. 275, 277, 150 S.E.2d 425, 427-28 (1966).

Our holding today does not negate the precedent found in *Village of Pinehurst*. In that case, we held that a preemptive right, i.e., a right of first refusal, to purchase the water and sewer facilities serving the Village of Pinehurst held by the plaintiff violated the rule against perpetuities, and declined to overrule our prior holding in *Smith v. Mitchell*, 301 N.C. 58, 269 S.E.2d 608 (1980). *Village of Pinehurst*, 330 N.C. at 728-29, 412 S.E.2d at 646-47. In that case, we also expressly

RICH, RICH & NANCE v. CAROLINA CONSTR. CORP.

[355 N.C. 190 (2002)]

declined to make exception to the rule based solely on use of the land for commercial purposes. *Id.* at 729, 412 S.E.2d at 646-47. That case does not, however, stand for the proposition that the rule would apply to all commercial transactions.

The instant case does not involve any sort of preemptive right, which would give us greater pause. *See, e.g., Village of Pinehurst,* 330 N.C. 725, 412 S.E.2d 645; *Smith,* 301 N.C. 58, 269 S.E.2d 608. A preemptive right may be a direct "restraint on the alienability of property in that it has the potential to deter would-be buyers by creating uncertainty and unwillingness to invest time and energy into purchasing the burdened property." *Village of Pinehurst v. Regional Investments of Moore: Perpetuating the Rule Against Perpetuities in the Realm of Preemptive Rights—North Carolina Refuses to Accept an Exception to the Rule,* 71 N.C. L. Rev. 2115, 2130 (1993). No such clear or direct restraint on alienation exists in the present case. The policy considerations that helped to justify our decisions in *Village of Pinehurst* and *Smith* are not present here, and we decline to extend the reach of the rule further into the realm of commercial interests where there is not a clear and direct restraint on alienation or marketability.

Thus, for the foregoing reasons, we conclude that the rule against perpetuities does not prevent the enforcement of the addendum to the real estate sales contract in this case. The addendum does not involve a nonvested future interest and does not violate the policies underlying the rule. Our decision today comports with the General Assembly's recently enacted statutory provisions concerning the inapplicability of the rule to some commercial transactions. We note, however, that defendant has raised other defenses against the payment arrangement which were not addressed by the Court of Appeals. On remand, the Court of Appeals is thus directed to consider these remaining issues not reached in its previous decision.

REVERSED AND REMANDED.