**NEW BAR P'SHIP v. MARTIN**

[221 N.C. App. 302 (2012)]

NEW BAR PARTNERSHIP, Plaintiff v. W.D. MARTIN, JR., W.D. MARTIN, III, TRUSTEE of the WILLIAM D. MARTIN, JR. LIVING TRUST, MMP, LLC and FMW at HILLSBOROUGH & MORGAN, LLC, Defendants

No. COA12-64

(Filed 19 June 2012)

### 1. Declaratory Judgments—no subject matter jurisdiction—lack of actual controversy—anticipated future actions—premature claim

The trial court did not abuse its discretion by dismissing under N.C.G.S. 1A-1, Rule 12(b)(6) plaintiff's claim for declaratory judgment unrelated to the right of first refusal against the Martin defendants. The lack of an actual controversy between the parties deprived the trial court of subject matter jurisdiction. Plaintiff merely anticipated future actions that might damage it.

### 2. Conspiracy—civil conspiracy—fraud—dismissal—underlying claims failed—no separate civil action in North Carolina

The trial court did not abuse its discretion by dismissing under N.C.G.S. 1A-1, Rule 12(b)(6) plaintiff's claim for civil conspiracy and fraud unrelated to the right of first refusal against the Martin defendants. Plaintiff's complaint did not allege it was deceived by either the Martin defendants' alleged misrepresentations that the lease had expired or by the alleged shell transfers. There is no separate civil action for civil conspiracy in North Carolina where a plaintiff's underlying claims fail.

### 3. Unfair Trade Practices—premature claim—no damages

The trial court did not abuse its discretion by dismissing under N.C.G.S. 1A-1, Rule 12(b)(6) plaintiff's claim for unfair and deceptive trade practices against the Martin defendants. Plaintiff had not yet suffered damages due to any actions or inactions by the Martin defendants, and accordingly, its claims for unfair and deceptive trade practices were properly dismissed as premature.

### 4. Contracts—commercial lease—right of first refusal—violation of common law rule against perpetuities

The trial court did not err to the extent it dismissed claims based upon the right of first refusal to purchase property against FMW and the Martin defendants for violation of the common law rule against perpetuities.

**5. Fraud—false representations that commercial lease expired—failure to comply with registration requirements—shell transfers of property—Connor Act**

The trial court did not err by dismissing plaintiff's claims against FMW under the Connor Act. While the complaint did allege fraud by FMW, all of the alleged fraudulent actions including false representations that the commercial lease had expired, failure to comply with the registration requirement in the first amended lease, and shell transfers of the property were taken by the Martin defendants. None of these actions constituted fraud under the Connor Act.

Appeal by Plaintiff from orders entered 25 October and 7 November 2011 by Judge Shannon R. Joseph in Wake County Superior Court. Heard in the Court of Appeals 8 May 2012.

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., and Ledolaw, by Michele A. Ledo, for Plaintiff.*

*Brown & Bunch, PLLC, by Charles Gordon Brown, for Defendants W.D. Martin, Jr., W.D. Martin, III, as Trustee of the William D. Martin, Jr. Living Trust, and MMP, LLC.*

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot and Sinèad N. O'Doherty, for Defendant FMW at Hillsborough & Morgan, LLC.*

STEPHENS, Judge.

*Procedural History and Factual Background*

This appeal concerns a dispute over a parcel of real property in downtown Raleigh. On 23 May 2011, Plaintiff New Bar Partnership ("New Bar") filed a *lis pendens* in Wake County Superior Court providing notice of the existence of claims potentially affecting title to the property at issue. New Bar then filed a complaint against Defendants W.D. Martin, Jr. ("Martin"), W.D. Martin, III, as Trustee of the William D. Martin, Jr. Living Trust ("the Martin Trustee"), MMP, LLC ("MMP"), and FMW at Hillsborough & Morgan, LLC ("FMW") (collectively, "Defendants"). New Bar alleged that Defendants had conspired to deprive it of its right of first refusal to purchase real property ("the property") owned by Martin and his successors. The complaint included a request for declaratory judgment and an action to quiet title, as well as claims for specific performance, breach of lease, civil conspiracy, fraud, and unfair and deceptive trade practices.

**NEW BAR P'SHIP v. MARTIN**

[221 N.C. App. 302 (2012)]

On 22 July 2011, FMW moved to dismiss the complaint pursuant to Rule 12(b)(6), asserting that New Bar's right of first refusal was invalid under the Connor Act, N.C. Gen Stat. § 47-18, and, in the alternative, had expired in 2009 under the common law rule against perpetuities ("the common law RAP"). On 27 July 2011, Martin, the Martin Trustee, and MMP (collectively, "the Martin Defendants") answered the complaint, asserting the common law RAP as a defense. On 15 September 2011, the Martin Defendants moved to dismiss pursuant to Rule 12(b)(6), and in the alternative, for judgment on the pleadings based on violation of the common law RAP, estoppel, lack of consideration, and other defenses. On 27 September 2011, New Bar filed a motion for a preliminary injunction preventing transfer of the property pending the outcome of the legal proceedings.

Following a hearing on the various motions, by order entered 25 October 2011, the trial court dismissed New Bar's claims against FMW pursuant to Rule 12(b)(6) ("the FMW order"). On 7 November 2011, the court (1) dismissed without prejudice New Bar's claims against the Martin Defendants (other than those related to the purported right of first refusal) pursuant to Rule 12(b)(6) and as premature, and (2) dismissed with prejudice New Bar's claims related to its alleged right of first refusal for failure to state a claim upon which relief could be granted and, in the alternative, granted summary judgment to the Martin Defendants on such claims ("the Martin order"). The court also dismissed as moot New Bar's motion for a preliminary injunction. New Bar appeals from the trial court's orders of dismissal. As discussed below, we affirm.

The origins of this legal dispute date to 15 October 1988, when Charlie Goodnight's, Inc. ("CGI") leased the property from Martin and his wife (since deceased) ("the Martins") pursuant to a written agreement ("the initial lease"). The initial lease term was from 15 December 1988 through 14 December 1993. At the end of the initial term, CGI had an option to renew the lease for three additional five-year terms. Thus, the option to renew was created in 1988 and ran from 15 December 1993 through 14 December 2008. The lease also provided CGI an option to purchase the property during the first five-year term of the lease and a right of first refusal to purchase the property during any subsequent five-year term of the lease should the option to renew be invoked. The right of first refusal also ran from 15 December 1993 through 14 December 2008.

In 1989, CGI and the Martins executed an amendment to the initial lease, adding the following paragraph:

The parties agree to execute in recordable form a memorandum of this Lease, and the Option to Purchase and Right of First Refusal contained herein, for recording in the Wake County registry. The cost of preparation and recording of the Memorandum will be borne by the Lessee.

However, neither a memorandum, the initial lease, the first amendment, nor any of the subsequent amendments to the lease were recorded.

On 1 March 1990, with the Martins' consent, CGI assigned all of its rights and interests in the initial lease to New Bar. On 1 December 1999, the Martins and New Bar executed a second amendment to the initial lease, extending New Bar's option to renew by two additional five-year terms, which purported to give New Bar a right to renew the lease through 14 December 2018. The amendment made the renewal automatic at the conclusion of each term unless New Bar provided notice otherwise. Because the right of first refusal in the initial lease exists during any renewal period, the right of first refusal was likewise purportedly extended until 14 December 2018. On 1 November 2002, Martin (his wife having died, leaving Martin as the sole lessor) executed a third amendment to the initial lease, purporting to extend the right to renew by another two five-year terms, to run through 14 December 2028.

On 27 May 2004, Martin transferred the property to the Martin Trust, with his son serving as the trustee. No consideration was given for the property, and New Bar was not advised of the transfer. At some point before 29 June 2010, the Martin Trust began negotiating the sale of the property to FMW, again without advising New Bar. On 29 June 2010, MMP was formed with Martin's son (also the Martin Trustee) as managing member. One day later, the Martin Trust transferred the property by deed to MMP for $10.00. On 15 July 2010, Martin's son, acting as manager of MMP, entered into an agreement to sell the property to FMW, with a closing date on or before 31 December 2011.

On 13 September 2010, Martin's son sent a letter on his father's behalf to New Bar stating that the 1999 and 2002 amendments to the initial lease were made without any consideration, and therefore, were invalid and did not extend the lease. In addition, Martin's son asserted that FMW was a purchaser for valuable consideration which could "take title and possession of the [p]roperty free and clear of any property interest" of New Bar, FMW having recorded a memorandum of its contract to purchase the property from MMP and New Bar hav-

ing failed to fulfill the recording obligation of the first amendment. Martin's son also asserted that New Bar had only a year-to-year tenancy based on an oral agreement which could be terminated by the property owner with one month's notice. New Bar then initiated this legal proceeding.

## Discussion

On appeal, New Bar argues that (1) its complaint stated claims against the Martin Defendants upon which relief could be granted and that were not premature; (2) its right of first refusal is not void under the common law or statutory RAP; and (3) FMW was not entitled to the protections of N.C. Gen. Stat. § 47-18 ("the Connor Act"). For the reasons discussed herein, we disagree.

### I.  Standard of Review

We review a trial court's order allowing a Rule 12(b)(6) motion to dismiss *de novo*. *Locklear v. Lanuti*, 176 N.C. App. 380, 384, 626 S.E.2d 711, 714 (2006).

> Our standard of review of an order allowing a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief.

> A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim[,] it will be dismissed.

*Id.* at 383-84, 626 S.E.2d at 714 (citations, quotation marks, and brackets omitted).

"[A] motion for judgment on the pleadings pursuant to Rule 12(c) should only be granted when the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law." *Cash v. State Farm Mut. Auto. Ins. Co.*, 137 N.C. App. 192, 201-02, 528 S.E.2d 372, 378 (cita-

tions and quotation marks omitted), *affirmed per curiam*, 353 N.C. 257, 538 S.E.2d 569 (2000). We review such decisions *de novo*. *Carpenter v. Carpenter*, 189 N.C. App. 755, 757, 659 S.E.2d 762, 764 (2008).

## II. Effect of the Martin Order

All of New Bar's claims are ultimately based upon two purported property interests: a right to renew its lease for additional terms through 2028 and a right of first refusal for purchase of the property. In its complaint, New Bar alleged the following claims against the Martin Defendants: breach of lease (based on the purported right of first refusal), civil conspiracy (based on both the right of first refusal and the assertion by the Martin Defendants that the lease had expired leaving New Bar no right to renew it for future terms), fraud (same), and unfair and deceptive trade practices.[1] New Bar also sought specific enforcement of the purported requirement in the first amendment to the lease that Martin (or his successors in interest) execute a memorandum of the lease for recordation in order to "reflect[] New Bar's right of first refusal[.]" In addition, in count I of its complaint, New Bar sought a declaration that, *inter alia*, (1) "[t]he lease [and its amendments] are valid and binding as to Martin[,]" (2) "[t]ransfers from Martin to the Martin Trust, and then to MMP, were not for value and that MMP . . . is fully subject to the lease[,]" (3) "FMW [] is not a 'purchaser for value,' such that FMW . . . is subject to New Bar's rights under the lease[,]" (4) "the FMW option is not valid and [should] be stricken from the record as a cloud upon New Bar's interest in the [] property[,]" and (5) New Bar is entitled to renewable terms under the lease to extend its tenancy through 2028.[2]

In addition to specifically dismissing all of New Bar's claims related to its purported right of first refusal pursuant to Rules 12(b)(6) and 12(c), the Martin order also dismisses "claims seeking enforcement of the lease covenant against the Martin Defendants, [for] failure to state a claim upon which relief can be granted and, [because] no material issue of fact exists that those claims have been asserted prematurely[.]"

---

1. The tort commonly referred to as "unfair and deceptive trade practices" in our case law is actually "unfair or deceptive acts or practices in or affecting commerce" in our General Statutes. *See* N.C. Gen. Stat. § 75-1.1(a) (2012). However, for ease of reading, we continue to use the term "unfair and deceptive trade practices" in this opinion.

2. Count I also seeks a declaration regarding the right of first refusal which we address separately below.

*III.  Claims Against the Martin Defendants Dismissed for Failure
to State a Claim and/or as Premature*

**[1]**  New Bar argues that the trial court erred in dismissing pursuant
to Rule 12(b)(6) and/or as premature its claims for declaratory judg-
ment (unrelated to the right of first refusal), civil conspiracy and
fraud (unrelated to the right of first refusal), and unfair and deceptive
trade practices against the Martin Defendants. We disagree.

*A.  Declaratory judgment*

> The Superior Court has jurisdiction to render a declaratory judg-
> ment only when the pleadings and evidence disclose the existence
> of a genuine controversy between the parties to the action, arising
> out of conflicting contentions as to their respective legal rights
> and liabilities under a deed, will, contract, statute, ordinance, or
> franchise. When jurisdiction exists, a contract may be construed
> either before or after there has been a breach of it. The purpose
> of the Declaratory Judgment Act is, to settle and afford relief
> from uncertainty and insecurity, with respect to rights, status,
> and other legal relations. . . . It is to be liberally construed
> and administered.

*Nationwide Mut. Ins. Co. v. Roberts,* 261 N.C. 285, 287, 134 S.E.2d
654, 656-57 (1964). However, the Declaratory Judgment Act explicitly
grants trial courts the discretion to determine whether entry of a
declaratory judgment is appropriate: "The court may refuse to render
or enter a declaratory judgment or decree where such judgment or
decree, if rendered or entered, would not terminate the uncertainty
or controversy giving rise to the proceeding[.]" N.C. Gen. Stat. § 1-257
(2011). "The trial court's decision to grant or deny such relief will be
reversed only upon a showing of abuse of discretion." *Farber v. N.C.
Psychology Bd.,* 153 N.C. App. 1, 17, 569 S.E.2d 287, 299, *cert. denied,*
356 N.C. 612, 574 S.E.2d 679 (2002). A matter left to the trial court's
discretion "will not be disturbed unless it is manifestly unsupported
by reason, or so arbitrary that it could not have been the result of a
reasoned decision. A trial judge's decision only amounts to an abuse
of discretion if there is no rational basis for it." *State v. Mutakbbic,*
317 N.C. 264, 273-74, 345 S.E.2d 154, 158-59 (1986) (citations and quo-
tation marks omitted).

Here, we see no abuse of discretion in the trial court's dismissal
because the lack of an actual controversy between the parties
deprived the trial court of subject matter jurisdiction.

Although not expressly provided by statute, courts have jurisdiction to render declaratory judgments only when the complaint demonstrates the existence of an actual controversy. To satisfy the jurisdictional requirement of an actual controversy, it must be shown in the complaint that litigation appears unavoidable. Mere apprehension or the mere threat of an action or suit is not enough.

*Wendell v. Long,* 107 N.C. App. 80, 82-83, 418 S.E.2d 825, 826 (1992). In *Wendell,* residential property owners brought a declaratory judgment action asking for a declaration that restrictive covenants in the deeds of their neighbors were valid and would prohibit a proposed construction project. *Id.* We held there was no actual controversy between the parties that would satisfy the jurisdictional requirement because the complaint alleged not "that [the] defendants ha[d] acted in violation of [] covenants, but [rather] that they anticipate[d] some future action to be taken by [the] defendants which would result in a violation." *Id.* at 83, 418 S.E.2d at 826.

Our review of the pleadings reveals a strikingly similar situation here. At the time New Bar's complaint was filed and the motions to dismiss were heard by the trial court, New Bar remained in possession of the property through the lease and no party had taken any action to interfere with its rights thereunder. Instead, New Bar only anticipated future actions that might damage it. As a result, the trial court lacked jurisdiction to render what would be an advisory opinion. "It is well-established that the issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte.*" *State v. Webber,* 190 N.C. App. 649, 650, 660 S.E.2d 621, 622 (2008). Accordingly, New Bar's arguments regarding its declaratory judgment claims are overruled.

## B. Civil conspiracy and fraud

**[2]** New Bar's claims for civil conspiracy and fraud are based in part on its purported right of first refusal (discussed in section IV below) and in part upon alleged misrepresentations that the lease had expired (leaving New Bar with only a tenancy from year-to-year subject to termination by MMP with notice at least one month prior to the current term of tenancy) and alleged shell transfers among the Martin Defendants for the purpose of shielding themselves from liability.

The essential elements of fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy,*

286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). New Bar's complaint does not allege it was deceived by either the Martin Defendants' alleged misrepresentations that the lease had expired nor by the alleged shell transfers. As to the civil conspiracy claim, "[i]t is well established that there is not a separate civil action for civil conspiracy in North Carolina. Instead, civil conspiracy is premised on the underlying act." *Piraino Bros., LLC v. Atl. Fin. Group, Inc.,* ___ N.C. App. ___, ___, 712 S.E.2d 328, 333 (2011) (citations and quotation marks omitted). Thus, where a plaintiff's underlying claims fail, its "claim for civil conspiracy must also fail." *Id.* at ___, 712 S.E.2d at 334. Accordingly, because New Bar plainly failed to state claims upon which relief could be granted, the court's dismissal was proper.

*C. Unfair and deceptive trade practices*

**[3]** The elements of an unfair or deceptive trade practice are: "(1) an unfair or deceptive act or practice by [the] defendant, (2) in or affecting commerce, (3) which proximately caused actual injury to [the] plaintiff." *Wilson v. Blue Ridge Elec. Membership Corp.,* 157 N.C. App. 355, 357, 578 S.E.2d 692, 694 (2003) (citations omitted). As noted in subsection A *supra,* at the date of the hearing on Defendant's motions to dismiss, New Bar remained in possession of the property under terms of the lease. Further, as discussed below, New Bar's purported right of first refusal was void under the common law RAP, and as a result, specific enforcement of the recordation requirement would have had no effect on New Bar's rights under the lease. Thus, New Bar had not yet suffered damages due to any actions or inactions by the Martin Defendants, and accordingly, its claims for unfair and deceptive trade practices claims were properly dismissed as premature.

*IV. Claims Related to the Right of First Refusal*

**[4]** New Bar also argues that the trial court erred to the extent it dismissed claims based upon the right of first refusal[3] against FMW and the Martin Defendants for violation of the common law RAP. We disagree.

Resolution of this aspect of the appeal requires consideration of two areas of our State's jurisprudence: (1) our case law on rights of first refusal, also known as preemptive rights; and (2) the effect of the

---

3. Those claims include breach of lease, specific enforcement of recordation requirement (sought solely to "reflect[] New Bar's right of first refusal"), and, to the extent they were based upon the purported right of first refusal, unfair and deceptive trade practices, civil conspiracy, and fraud.

1995 enactment of the Uniform Statutory Rule Against Perpetuities, N.C. Gen. Stat. § 41-15, *et seq.* ("the USRAP"), on the common law RAP doctrine in our State.

## A. Preemptive rights/rights of first refusal

A preemptive right requires that, before the property conveyed may be sold to another party, it must first be offered to the conveyor or his heirs, or to some specially designated person. . . . A preemptive provision . . . creates in its holder only the right to buy land before other parties if the seller decides to convey it. Preemptive provisions may be contained in leases, in contracts, or . . . in restrictive covenants contained in deeds or recorded in chains of title.

*Smith v. Mitchell*, 301 N.C. 58, 61, 269 S.E.2d 608, 610-11 (1980). The Court in *Smith* established the rule that "preemptive provisions which are unreasonable are void as imposing impermissible restraints on alienation[,]" and noted that "two primary considerations dictate the reasonableness or unreasonableness of a preemptive right: the duration of the right and the provisions it makes for determining the price of exercising the right." *Id.* at 65, 269 S.E.2d at 613. "The general rule is that as long as the price provision in a preemptive right provides that the price shall be determined either by the marketplace or by the seller's desire to sell, a preemptive right is reasonable *if its duration does not violate the rule against perpetuities.*" *Id.* at 66, 269 S.E.2d at 613 (emphasis added). After discussing various possible approaches to time-limiting preemptive rights, the Court resolved that "the better rule is to limit the duration of the right to a period within the rule against perpetuities and thus avoid lengthy litigation over what is or is not a reasonable time within the facts of any given case." *Id.*

## B. The common law RAP and the USRAP

At the time of the *Smith* opinion, our State relied solely upon the common law RAP. *Id.* For property interests established without reference to any measuring life (like the lease at issue here), the common law RAP voids any interest not certain to terminate or vest within 21 years. *Mizell v. Greensboro Jaycees-Greensboro Junior Chamber of Commerce, Inc.*, 105 N.C. App. 284, 287, 412 S.E.2d 904, 906-07 (1992). However, effective 1 October 1995, the General Assembly enacted the USRAP which, among other actions, added a 90-year "wait and see" alternative to the common law RAP. N.C. Gen. Stat. § 41-15(a)(2) (2011). Under this section, certain nonvested prop-

erty interests that violate the common law RAP can survive if the interest actually "vests or terminates within 90 years after its creation." *Id.*

As all parties acknowledge, section 41-18 makes clear that the USRAP does not apply to nonvested property rights arising from nondonative transfers[4] such as the commercial lease between New Bar and Martin and his successors. *See* N.C. Gen. Stat. § 41-18 (2011) (titled "Exclusions from statutory rule against perpetuities."). Despite this acknowledgment, New Bar asserts that section 41-22 of the USRAP *is* applicable to commercial leases: "This Article supersedes the rule of the common law known as the rule against perpetuities." N.C. Gen. Stat. § 41-22 (2011). New Bar contends that the result of this language from section 41-22 and the explicit exclusion of nonvested property rights arising from commercial leases in section 41-18 is that the right of first refusal here is not subject to *any* rule against perpetuities, whether common law or statutory. In other words, New Bar contends that the USRAP *replaced* the common law RAP as to donative transfers, but *abolished* the common law RAP as to nondonative transfers. We are not persuaded.

The plain language of section 41-18 excludes the right of first refusal at issue here from the statutory rule against perpetuities and section 41-22 states that the USRAP "supercedes" the common law RAP. "Supersede"[5] means "to annul, make void, or repeal by taking the place of[.]" Black's Law Dictionary 1479 (8th ed. 2004). In contrast, "abolish" means "to annul, eliminate or destroy[.]". *Id.* at 5. Hence, the General Assembly's use of the word "supercede" in section 41-22 indicates its intention to *replace* the common law RAP with the statutory provisions as to the types of transfers not excluded from the USRAP. In turn, because the USRAP specifically excludes the nondonative transfer here from its provisions, there is nothing to "supercede" the common law RAP as to New Bar's right of first refusal. Thus, we conclude that the USRAP did not replace the common law RAP as to preemptive rights arising from nondonative transfers such as that at issue here. As such, the USRAP is inapplicable to this appeal.

---

4. This section includes exceptions for certain nondonative transfers, none of which are applicable here. *See* N.C. Gen. Stat. § 41-18. For ease of reading, we use the phrase "nondonative transfers" to mean "nondonative transfers not covered by statutory exceptions" in this opinion.

5. Unlike our General Statutes, Black's Law Dictionary uses the traditional British spelling.

*C. Applicability of the common law RAP to New Bar's right of first refusal*

New Bar contends that, even if the common law RAP remains in effect for some nondonative transfers, its right of first refusal is not void under the doctrine because its preemptive right "does not violate the underlying policies of the rule [against perpetuities.]" In support of this contention, New Bar cites *Rich v. Carolina Constr. Corp.*, 355 N.C. 190, 193, 558 S.E.2d 77, 79 (2002), in which our Supreme Court considered "whether the [common law] rule against perpetuities prevents [a] plaintiff from enforcing against [a] defendant the contractual rights . . . [to] collect[] its deferred payments or the availability fee. . . . and conclude[d] that the rule d[id] not prevent enforcement of the contractual rights . . . ." New Bar draws our attention to the following language from *Rich*:

> [O]ur common law rule against perpetuities does not exclude commercial interests from its application. However, the rule under the common law does not apply in all cases involving commercial transactions. Commercial transactions that do not violate the underlying policies behind the rule against perpetuities, as well as those involving mere contract provisions or present vested interests, do not fit under the umbrella of the common law rule.

*Id.* at 194, 558 S.E.2d at 80 (citation omitted). New Bar asserts that, relying on *Rich*, we should evaluate the policy behind the common law RAP as applied to its right of first refusal. We decline to do so in light of the Supreme Court's clear guidance in *Smith* (which, unlike *Rich*, specifically addressed a right of first refusal) that "the better rule is to limit the duration of the right to a period within the rule against perpetuities and thus avoid lengthy litigation over what is or is not a reasonable time within the facts of any given case." *Smith*, 301 N.C. at 66, 269 S.E.2d at 613. Our Supreme Court reaffirmed this holding in *Pinehurst v. Regional Inv. of Moore, Inc.*, 330 N.C. 725, 728-29, 412 S.E.2d 645, 646-47 (1992):

> The Court of Appeals held that summary judgment was properly entered for the defendants because the right of first refusal was not limited in time and this duration violated the rule against perpetuities. We hold that we are bound by *Smith v. Mitchell*, 301 N.C. 58, 269 S.E.2d 608 (1980), to affirm the Court of Appeals. In *Smith*, we held that a preemptive right was not void because it terminated within the period of the rule against perpetuities. We said that a preemptive right or a right of first refusal to be valid must not extend beyond the period of the rule against perpetu-

ities. It is true, as the plaintiff argues, that this part of our opinion in Smith could be considered dictum. It is clear, however, that in *Smith* it was this Court's intention to make the rule against perpetuities applicable to preemptive rights. We would have to overrule *Smith* to say the rule does not apply, which we decline to do.

The plaintiff, relying on cases from other jurisdictions, . . . argues that there should be an exception to the application of the rule against perpetuities in this case because the preemptive right is for the purchase of a business. . . .

We do not believe we should make an exception to the rule because the real property which the plaintiff desires to purchase is used in the operation of a business. If a restraint on alienation is bad, we see no reason why it is made good because it is part of a commercial transaction or the property is used for business purposes. We note that in *Smith* the restriction was put on the lot in connection with the development of a tract of land as a real estate development. This made it part of a commercial transaction.

Being bound by the decisions of our Supreme Court, we also hold that "a preemptive right or a right of first refusal to be valid must not extend beyond the period of the [common law RAP]." *Id.* at 728, 412 S.E.2d at 646.

Here, the initial lease (executed 15 December 1988) was for a five-year term with the option to renew for up to three additional five-year terms.[6] The initial lease also provided a right of first refusal for purchase of the property during any subsequent five-year term of the lease should the option to renew the lease be invoked. This preemptive right was created at the "expiration of the initial five[-]year lease term[,]" specifically defined in the initial lease as "12:00 midnight on the 15th day of December, 1993." Thus, the right of first refusal was created on 15 December 1993 when the lease was renewed and continued for 15 years. However, the second and third amendments to the initial lease explicitly extended the renewal terms of the initial lease, and by extension, New Bar's right of first refusal, until 15 December 2028, some 35 years after the December 1993 creation of the right. As such, New Bar's right of first refusal violates the common law RAP and, pursuant to *Smith*, is void. Having held the right of first refusal void for violating the common law RAP, we need not address New Bar's contentions regarding the validity of the right

6. During the initial five-year term of the lease, CGI also had an option to purchase the property for $450,000.00 in cash.

based on the second prong in *Smith,* the reasonableness of the defining price provision. Thus, we affirm both the Martin and FMW orders to the extent they dismissed New Bar's claims related to its purported right of first refusal.

### V. *Applicability of the Connor Act to Claims Against FMW*

**[5]** New Bar also argues that the court erred in dismissing its claims against FMW under the Connor Act. We disagree.

Our review of the pleadings reveals that New Bar's complaint adequately alleged its various claims against FMW. Thus, the trial court's dismissal of all claims against FMW pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted can only have been based upon FMW's assertion of various defenses thereto. As noted *supra,* all claims arising directly from New Bar's purported right of first refusal were properly dismissed based upon a common law RAP defense. *See Locklear,* 176 N.C. App. at 384, 626 S.E.2d at 714. However, New Bar also sought a declaration that its lease was valid and that, as a result, it retained the right to renew the lease through 2028. In the trial court and on appeal, FMW asserted that, because the lease was unrecorded, the Connor Act invalidated the lease as to FMW.

Under the Connor Act,

> [n]o . . . lease of land for more than three years shall be valid to pass any property interest as against . . . purchasers for a valuable consideration . . . but from the time of registration thereof in the county where the land lies. . . . [I]nstruments registered in the office of the register of deeds shall have priority based on the order of registration as determined by the time of registration[.]

N.C. Gen. Stat. § 47-18(a) (2011).

> Our decisions applying the Connor Act establish these legal results:
>
> (1) The registration of a deed conveying an interest in land is essential to its validity as against a purchaser for a valuable consideration from the grantor.
>
> (2) A lease for more than three years must, to be enforceable, be in writing, and to protect it against creditors or subsequent purchasers for value, the lease must be recorded.

(3) As between two purchasers for value of the same interest in land, the one whose deed is first registered acquires title.

(4) Actual knowledge, however full and formal, of a grantee in a registered deed of a prior unregistered deed or lease will not defeat his title as a purchaser for value *in the absence of fraud or matters creating estoppel.*

*Bourne v. Lay & Co.*, 264 N.C. 33, 35, 140 S.E.2d 769, 771 (1965) (emphasis added) (citations omitted). Thus, under the Connor Act, "until such [a] contract is registered, third parties may deal with the property to which it relates as if no contract existed." *Eller v. Arnold*, 230 N.C. 418, 421, 53 S.E.2d 266, 269 (1949). As a result, negotiations regarding such a property cannot constitute fraud or conspiracy simply because the parties negotiating are aware of an unrecorded lease. *See id.* ("If these acts are not wrongful or illegal, no agreement to commit them can properly be called an illegal and wrongful conspiracy.") (citation and quotation marks omitted).

Here, the initial lease was for more than three years and was never recorded, while FMW recorded its option to purchase the property on 20 July 2010. Thus, as New Bar concedes, "FMW 'won the race to the courthouse.' " However, New Bar contends that it adequately pled fraud as a bar to FMW's invocation of the Connor Act.

Having carefully reviewed the factual allegations of New Bar's complaint, we are not persuaded. While the complaint does allege fraud by FMW, all of the allegedly fraudulent actions, to wit, false representations that the lease had expired, failure to comply with the registration requirement in the first amended lease, and shell transfers of the property, were taken by the Martin Defendants, not by FMW. Further, we conclude that none of these actions constitute "fraud" under the Connor Act. Even if FMW had "full and formal" actual knowledge of New Bar's lease, the registration requirement therein, and the chain of transfers of the property among the Martin Defendants, the fact remains that the lease was for more than three years and had remained unrecorded for more than two decades. As such, FMW, like the defendant in *Eller*, "had the legal right to deal with the property . . . as if no contract existed. Hence, no cause of action is stated against them." *Id.* at 422, 53 S.E.2d at 269. Accordingly, the trial court did not err in dismissing New Bar's claims against FMW. This argument is overruled.

The Martin and FMW orders are

AFFIRMED.

Judges MCGEE and HUNTER, JR., ROBERT N., concur.

